*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0412p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

BENNY JOHNSON, JR.,

        *Petitioner-Appellant,*

*v.*

        No. 04-1518

TIM LUOMA, Warden,

        *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-71780—Victoria A. Roberts, District Judge.

Argued and Submitted: September 14, 2005

Decided and Filed: October 12, 2005

Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Christopher J. Pagan, REPPER, POWERS & PAGAN, Middletown, Ohio, for Appellant. **ON BRIEF:** Christopher J. Pagan, REPPER, POWERS & PAGAN, Middletown, Ohio, for Appellant. William C. Campbell, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

---

**OPINION**

---

    RONALD LEE GILMAN, Circuit Judge. In April of 1998, Benny Johnson Jr. was tried in a Michigan state court for first-degree sexual assault, felonious assault, domestic violence, and two counts of kidnapping. The jury convicted him on the domestic violence and kidnapping counts, but acquitted him of the sexual-assault and felonious-assault charges. He was sentenced to concurrent prison terms of 10 to 30 years for each of the kidnapping convictions and 93 days for the domestic violence conviction. After the verdict, Johnson learned that a member of the jury was a complaining witness in a domestic violence case that was pending during Johnson's trial. Johnson's motion for a new trial based on juror bias and ineffective assistance of counsel was denied. His conviction was subsequently affirmed by the Michigan Court of Appeals, and the Michigan Supreme Court denied him leave to appeal.

    Johnson then filed a petition in federal court for habeas corpus relief pursuant to 18 U.S.C. § 2254, claiming juror bias and the ineffective assistance of counsel. The district court denied his

petition, but granted a Certificate of Appealability on the two issues raised by Johnson.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.      Factual background

The incident for which Johnson was tried involved the kidnapping of and assault on his former girlfriend, Keesha Groves.  In September of 1997, Groves visited Johnson's mother, who had agreed to babysit Groves's three-year-old son.  Johnson and his mother had just been in a big argument.  His mother told Groves about this altercation and suggested that Groves "take [him] somewhere for a little while to cool off."  *People v. Johnson*, 631 N.W.2d 1, 4 (Mich. Ct. App. 2001).

After Groves and Johnson ran some errands and had dinner, Groves drove back to the home of Johnson's mother.  Instead of leaving the car when they arrived, however, Johnson began to badger Groves about their relationship and about Groves's recent purchase of a new home. Johnson then grabbed the car keys and, when Groves left to call her brother for a ride home, Johnson threatened to kill her brother.  *Id*.

When Groves attempted to walk away, Johnson "shoved her, blocked her way, and threatened her with a stick."  *Id*.  Groves then went into the house to make a telephone call, but left because she feared that Johnson would strike his mother.  Johnson caught up with her when she tried to run away.  After Johnson threatened to kill Groves if she did not return to the car, she and her son got in.  Johnson first drove to a gas station and then to a party store to buy some beer.  With Groves still in the car, Johnson drank the beer in his mother's driveway.  He offered to return Groves's car keys if she had sex with him.  Although she did so, Johnson still did not return the keys.  *Id*.

Johnson then drove Groves and her son to Groves's new house, where the three slept on the floor.  In order to prevent Groves from escaping, Johnson physically restrained Groves's son. Groves drove Johnson to work the following morning at Johnson's insistence.  A police officer pulled the vehicle over for a traffic violation, but Groves did not alert the officer to her situation. When they arrived at Johnson's place of employment, Johnson requested the day off and got back into the car.  *Id*.

The two of them continued to drive around, with Johnson thwarting Groves's attempt to get help from a truck driver by holding Groves's son hostage and then attempting to choke her.  *Id*. at 4-5.  Finally, Groves talked Johnson into taking her back to his mother's house.  Although Johnson told Groves to lie to the police about what had happened, Groves promptly went to the police station and reported the incident.  *Id*.

### B.      Procedural background

Johnson was charged with one count of first-degree criminal sexual conduct in violation of Mich. Stat. Ann. § 28.788(2)(1)(f), one count of felonious assault in violation of Mich. Stat. Ann. § 28.277, two counts of kidnapping in violation of Mich. Stat. Ann. § 28.581, and one count of domestic violence in violation of Mich. Stat. Ann. § 28.276(2).  *Johnson*, 631 N.W.2d at 5.

During the questioning of potential jurors, which was conducted in April of 1998, the trial judge asked them: "Are there any among you who have been previously a victim of a crime?"  *Id.* at 6.  Juror 457 said that she "ha[d] been assaulted," but did not elaborate.  *Id*.  When the district court then asked whether that experience "would . . . interfere with your ability to listen to the facts of this case and decide this case from the evidence here," the juror answered "[n]o, I can keep it separate."  *Id*.

Johnson's counsel later asked whether any of the potential jurors had been threatened with a weapon. *Id*. Juror 457 revealed that "she had been hit in the head with a gun as a teenager but could disregard the experience." *Id*. But she failed to disclose a domestic violence charge that she had filed in a Michigan state court claiming that she was assaulted with a gun in November of 1997, approximately five months before the voir dire. She was then 38 years old according to an application for a personal-protection order that she had filed approximately one year prior to the voir dire.

Juror 457 did not respond to several more general questions put to the panel of potential jurors. These questions included the trial court's inquiry as to whether there was any reason that the jurors should not serve in the case, the prosecutor's question as to whether any of the jurors would have difficulty sitting on a jury in a felonious-assault and domestic violence case, and the defense counsel's questions about whether the potential jurors had anything "weighing on their minds" that would prevent the jurors' full attention or whether they would want themselves as a juror if they were the one on trial. *Id.*

Although the jury acquitted Johnson on the criminal-sexual-conduct and felonious-assault charges, Johnson was convicted on both counts of kidnapping and on one count of domestic violence. *Id*. at 5. Johnson subsequently learned that, at the time of his trial, Juror 457 was the complaining witness in a domestic violence case that was currently being prosecuted by the same prosecutor's office. *Id*. at 6. The state trial court denied Johnson's motion for a new trial, noting that although Juror 457 had disclosed that she had been a victim of an assault in the past, she had said that she would be able to judge the case fairly. *Id.* at 6-7.

On appeal, the judgment was affirmed by the Michigan Court of Appeals, which concluded that Juror 457 had not concealed information during voir dire. *Id*. at 7. Likewise, the Court of Appeals rejected Johnson's ineffective-assistance-of-counsel claim, stating that there was no reasonable probability that the outcome of the trial would have been any different even if Johnson's attorney had inquired further about Juror 457's domestic violence experiences. *Id*. at 11. The Michigan Supreme Court, with two justices dissenting, denied Johnson leave to appeal. *People v. Johnson*, 654 N.W.2d 321 (Mich. 2002).

Johnson then brought a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. With the court's permission, Johnson introduced new evidence showing that Juror 457 had been the complaining witness in four other domestic violence cases in the two-and-a-half years before the voir dire was conducted. Juror 457's assailant, who was the same in all five cases, was charged with domestic violence against Juror 457 in January of 1996, domestic violence in March of 1997, felonious assault in November of 1997, domestic violence in December of 1997, and both felonious assault and domestic violence in January of 1998. He was convicted in every case except the first.

Although the district court admitted evidence of the four additional charges, its opinion did not discuss any evidence beyond what Johnson had submitted in his motion for a new trial before the state trial court. The district court reasoned that Juror 457 had not concealed her experiences because she "was never specifically asked whether she had been the victim of a domestic assault," and concluded that Johnson had failed to show actual bias. Juror 457's failure to disclose her experience of being threatened with a gun in November of 1997 was not explicitly addressed in the district court's opinion. In ruling on Johnson's ineffective-assistance-of-counsel claim, the district court concluded that the failure of his counsel to further inquire about Juror 457's experiences did not constitute ineffective assistance. The district court therefore denied Johnson's petition for a writ of habeas corpus. It did, however, grant a Certificate of Appealability on the issues of juror bias and ineffective assistance of counsel. Johnson's timely appeal followed.

## II. ANALYSIS

### A.     Standard of review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court

> may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" . . . or (2) "the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir. 2002) (quoting 28 U.S.C. § 2254 (d)). This standard generally requires that federal courts defer to state-court decisions. *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.") (citation and quotation marks omitted).

The first line of analysis under AEDPA involves the consistency of the state-court decision with existing federal law. A state-court decision is considered "contrary to . . . clearly established Federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Alternatively, to be found an "unreasonable application of . . . clearly established Federal law," the state-court decision must be "objectively unreasonable" and not simply erroneous or incorrect. *Id*. at 409-11.

The second line of analysis under AEDPA concerns findings of fact made by the state courts. AEDPA requires considerable deference to such factual determinations. "A federal court is to apply a presumption of correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. The appeals court gives complete deference to the federal district court's and state court's findings of fact supported by the evidence." *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004) (citations omitted).

Although Johnson cites authority in support of the proposition that no deference is due where new evidence is presented on federal habeas review, the decisions relied upon involve the failure of a prosecutor to disclose exculpatory evidence under *Brady*, not new evidence of alleged juror bias. *See Killian v. Poole*, 282 F.3d 1204, 1207-08 (9th Cir. 2002); *Monroe v. Angelone*, 323 F.3d 286, 297 (4th Cir. 2003). Johnson has not set forth any authority to support the conclusion that such a rule exists in this circuit even with respect to new *Brady* material, much less with regard to juror bias. We therefore conclude that the traditional rule of deference discussed in *McAdoo* is appropriate in this case. *See McAdoo*, 365 F.3d at 493-94.

### B.     Johnson's claim of juror bias

#### 1.     *Factual findings of the Michigan courts*

Based on the record that existed at the time, the Michigan trial court and the Michigan Court of Appeals found that Juror 457 gave honest answers at voir dire and did not conceal or misrepresent any information sought during that portion of the trial. *Johnson*, 631 N.W.2d at 7. The Michigan Court of Appeals acknowledged Juror 457's voir dire responses that she "ha[d] been assaulted" and that "someone had hit her on the head with a gun when she was a teenager." *Id*. Johnson's revelation in his motion for a new trial that Juror 457 was the complaining witness in a currently pending domestic violence prosecution, *id*. at 6, did not cause the state courts to change their findings.

During habeas review before the district court, Johnson succeeded in introducing new evidence via a motion to expand the record. This evidence consisted of records of charges, proceedings, and convictions for five separate domestic violence incidents involving Juror 457 as the complaining witness, including the pending prosecution of which Johnson and the Michigan Court of Appeals were already aware (because Johnson had raised the matter in his state-court motion for a new trial).

The additional evidence does not refute the fact that, when asked about her previous experience as a crime victim, Juror 457 truthfully answered that she had been assaulted. This response does not imply that there was only one assault, nor is it misleading as to the particular nature of the assaults (the assaults on Juror 457 were domestic in nature). The response also implies no time frame for the assaults, so the fact that one of the incidents was currently being prosecuted does not contradict the truthfulness of Juror 457's answer.

Further, there is no evidence that Juror 457 deliberately lied or concealed information when she responded to defense counsel's question about being threatened with a weapon when she said that "she had been hit in the head with a gun as a teenager but could disregard the experience." The record reflects, however, that Juror 457 was the victim of a felonious assault in November of 1997, only five months prior to voir dire. This incident resulted in the assailant being accused of assaulting Juror 457 with a hand gun without intent to murder or to inflict great bodily harm. *Id*. Nothing in the record indicates that Juror 457 was hit in the head with a hand gun at that time (contrary to Johnson's assertion in his pleadings).

These facts do not establish that Juror 457 lied or concealed information in response to defense counsel's question. Johnson failed to show that Juror 457 was not in fact hit in the head with a gun when she was a teenager. And as to the much more recent assault with a hand gun, Johnson presented no proof to show that Juror 457 deliberately concealed the incident as opposed to simply having overlooked it. Particularly telling is that Johnson presented no affidavit from Juror 457 that explains her voir dire responses.

Likewise, the record does not show that Juror 457 lied or concealed information when she failed to respond to the more general questions put to the panel of potential jurors by the trial court, the prosecutor, and the defense counsel. The particular questions cited by Johnson are so indefinite and call for such subjective responses that Juror 457's silence cannot fairly be said to be false or misleading. Although Johnson argues that these questions were "obviously designed to evoke a response from a person with her background," he fails to set forth clear and convincing evidence that Juror 457's lack of response amounted to concealment.

In sum, Johnson has been unable to rebut the presumption that the findings of the Michigan courts were correct. The findings are supported by the evidence and must be given deference under AEDPA. *See McAdoo*, 365 F.3d at 493-94.

### 2.       *Consistency of the Michigan decisions with federal law*

In addition to evaluating the findings of fact made by the Michigan courts, Johnson's habeas petition requires an analysis of the consistency of the Michigan court decisions with existing federal law. The standard governing whether a defendant is entitled to a new trial based on juror responses to voir dire questions is set forth in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984). *McDonough* held that in order to obtain a new trial on the basis of a juror's inaccurate response, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556.

        With regard to *McDonough*'s first prong, the Michigan courts determined that Juror 457 honestly answered all questions posed during voir dire. Johnson has not demonstrated that Juror 457 deliberately lied or concealed information, and thus has not shown that the state-court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

        Regarding *McDonough*'s second prong, a juror is subject to a valid challenge for cause based on actual bias and, in certain limited circumstances, implied bias. *See United States v. Torres*, 128 F.3d 38, 43, 49 (2d Cir. 1997) (discussing actual bias and implied bias standards, and upholding the trial judge's decision to strike a potential juror based on bias inferred from the similarity between the juror's previous structuring of financial transactions and the defendant's conduct that allegedly violated federal money laundering laws). Actual bias is "bias in fact" and focuses on the record at voir dire. *Id*. at 43. Johnson does not argue that Juror 457 was actually biased; he instead argues that bias should be implied.

        "The doctrine of presumed or implied, as opposed to actual, bias provides that, in certain 'extreme' or 'exceptional' cases, courts should employ a conclusive presumption that a juror is biased." *United States v. Frost*, 125 F.3d 346, 379 (6th Cir. 1997) (citations omitted). A finding of implied bias is appropriate only "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988) (rejecting a white supremacist group's claim of implied bias on the part of all potential black jurors in a criminal contempt proceeding to enforce an injunction against the operation of a paramilitary organization). Examples given in a concurring opinion by Justice O'Connor illustrate the extreme situations that might result in implied bias. They are "that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring).

        Johnson's reliance on the implied-bias doctrine fails for two reasons. First, the implied-bias doctrine may not even be viable after *Smith*. Courts that have reviewed the *Smith* decision, including this circuit, have suggested that the majority's treatment of the issue of implied juror bias calls into question the continued vitality of the doctrine. *See, e.g., United States v. Herndon*, No. 99-5642, 2000 WL 1290378, at *4 (6th Cir. Sept. 6, 2000) (unpublished) ("The [*Smith*] majority does not specifically say, one way or the other, whether there are any situations in which they would presume prejudice. Such a remedy, if it still exists, would presumably be limited to the type of extreme situations identified by Justice O'Connor in her . . . concurrence."); *Conner v. Polk*, 407 F.3d 198, 206 n.4 (4th Cir. 2005) (discussing the *Smith* majority's failure to adopt the implied-bias rationale and Justice O'Connor's concurring opinion, and concluding that "[t]here may be some question as to whether implied bias remains a viable doctrine following the Supreme Court's majority opinion in *Smith*").

        Second, even if we assume that the implied-bias doctrine is still viable, Johnson has failed to show that this is one of the "extreme" or "exceptional" cases that merit such a finding. *See Frost*, 125 F.3d at 379. Juror 457's circumstances are simply not comparable to the examples provided by Justice O'Connor, especially in light of the juror's unqualified statement that she could keep her experiences separate.

        Nor are the two cases relied upon by Johnson comparable to the circumstances here. One is *Dyer v. Calderon*, 151 F.3d 970, 979-84 (9th Cir. 1998) (en banc), in which the court held that a finding of implied bias was proper where a juror "lies materially and repeatedly" during voir dire and to the trial judge in chambers. The court stated that "the magnitude of [the juror]'s lies and her

remarkable display of insouciance—her expressed feeling that only she would decide what matters—fatally undermine our confidence in her ability to fairly decide Dyer's fate." *Id*. at 984.

In the second case cited by Johnson, *United States v. Eubanks*, 591 F.2d 513, 516 (9th Cir. 1977) (per curiam), the defendant was being prosecuted for a conspiracy to distribute heroin and for possession of heroin with the intent to distribute. The juror in question had two sons serving long prison terms for murder and robbery, perpetrated in furtherance of their heroin habit. *Id*. In the juror-qualification form, the juror lied and said that he had no children. *Id*. The juror also failed to respond to the trial judge's question about whether the jurors or "members of [their] immediate families [had] ever been personally interested in the defense of a criminal case or a witness for the defense in a criminal case." *Id*. The Ninth Circuit found that the heroin involvement of the juror's sons "bar[red] the inference that [the juror] served as an impartial juror," *Id*. at 517, essentially implying juror bias.

*Dyer* and *Eubanks* are easily distinguishable from the case before us, however, because the jurors at issue in those cases lied extensively to get on the jury. In *Dyer*, the court stated that "[t]he individual who lies in order to improve his chances of serving has too much of a stake in the matter to be considered indifferent. . . . [T]his excess of zeal introduces the kind of unpredictable factor into the jury room that the doctrine of implied bias is meant to keep out." *Dyer*, 151 F.3d at 982.

Johnson has failed to show that the doctrine of implied bias is applicable to his case. Juror 457's responses were simply not so far off the mark as to show that this is an extreme or exceptional case to which the implied-bias doctrine is meant to apply. *See Frost*, 125 F.3d at 379; *Smith v. Phillips*, 455 U.S. at 222 (O'Connor, J., concurring). Consequently, Johnson has not demonstrated that the responses he contends were not forthcoming would have subjected Juror 457 to a valid challenge for cause, and thus has not shown that the state-court decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

## C.    Johnson's ineffective-assistance-of-counsel claim

In order to prevail on a claim of ineffective assistance of counsel, Johnson must show that (1) his counsel performed deficiently, and (2) his counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citation omitted). In order to show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

In Johnson's direct appeal of his convictions, he argued that he had been deprived of the effective assistance of counsel. The Michigan Court of Appeals applied the *Strickland* standard and found that counsel's voir dire decisions were based on valid strategic choices. *Johnson*, 631 N.W.2d at 11. It also concluded that there was no reasonable probability that a challenge to Juror 457 would have resulted in the outcome of the case being any different. *Id*.

Johnson again presents his ineffective-assistance-of-counsel claim as an alternative ground for relief in this habeas action. Applying the AEDPA standard for habeas review, we hold that the state court's decision was a reasonable application of the *Strickland* standard. Juror 457 repeatedly assured the trial court that she could be impartial. Based on those assurances, the state court could reasonably conclude that defense counsel's decision to not inquire further into Juror 457's background was a strategic choice thought to be beneficial to his client.

The state-court decision that Johnson was not prejudiced by his attorney's failure to further inquire was likewise reasonable. In order to show prejudice arising out of his attorney's failure to strike a biased juror, Johnson must show that Juror 457 was actually biased against him. *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) ("Petitioner's claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror. To maintain a claim that a biased juror prejudiced him, however, [Petitioner] must show that the juror was actually biased against him.") (quotation marks omitted). *But see United States v. Frost*, 125 F.3d 346, 379 (6th Cir. 1997 (discussing the doctrine of implied juror bias in the context of a direct appeal from a mail fraud conviction).

The Michigan trial court accepted Juror 457's assurances that she could be impartial. Based on these assurances, the Michigan Court of Appeals found "no reasonable probability that the outcome of the case would have been different." *Johnson*, 631 N.W.2d at 11. Johnson failed to present any evidence of Juror 457's actual bias, instead relying on the doctrine of implied bias in this habeas action. But because the factual circumstances here do not justify a finding of implied bias, we need not decide whether such a showing would be legally sufficient to establish a *Strickland* violation. *Compare Hughes*, 258 F.3d at 458, *with Frost*, 125 F.3d at 379. Johnson, in sum, has failed to show that the state-court decision holding that he was not deprived of his Sixth Amendment right to the effective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

## III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.