NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0437n.06

No. 07-4121

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 24, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| MARK A. RYDER, | ) |
| | ) |
| *Petitioner-Appellant,* | ) |
| | ) |
| v. | ) On Appeal from the United States |
| | ) District Court for the Northern |
| | ) District of Ohio |
| PHILLIP KERNS, Warden | ) |
| | ) |
| | ) |
| *Respondent-Appellee.* | ) |

Before: **MCKEAGUE and GRIFFIN, Circuit Judges;** and **WEBER, District Judge.**[*]

**PER CURIAM.**

Petitioner-Appellant, Mark Ryder ("Ryder") appeals the district court's denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. Petitioner contends on appeal that the district court erred in finding that his trial counsel was not ineffective and that the state trial court's failure to grant a hearing on the issue did not violate his due process rights.

We conclude the district court correctly found that the state courts' decisions reasonably comport with clearly established Federal law. For the following reasons, we **AFFIRM** the decision of the district court and **DENY** the Writ .

---

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

1

# I.

On November 10, 1998, an Ohio grand jury returned a ten-count Indictment against Ryder. Count One charged Ryder with domestic violence on September 5, 1998, a fourth degree misdemeanor. The remaining counts charged violations of the law on October 5, 1998. The most serious offenses charged were aggravated burglary and kidnaping, first degree felonies with a potential sentence of ten years imprisonment each, and felonious assault, a second degree felony with a potential sentence of eight years imprisonment. The remaining charges were misdemeanors which run concurrently to felony sentences by operation of law. Ohio Rev. Code § 2929.41(A) (Anderson 1998).

The charges arose from allegations made by Theresa Hyer ("Hyer") who told police on October 5, 1998 that in the pre-dawn hours of that day petitioner broke into her house, and dragged her out of her house, had a knife at her throat, pulled her into her van, savagely beat her, and threatened to kill her if she called the police.

The case was tried to a jury. The facts of the October 5, 1998 crimes, as adduced at trial are set forth in the Decision of the Court of Appeals for the Ninth District. According to the Court of Appeals:

> Ryder and Theresa Hyer were romantically involved from sometime in 1993 until August 1998. Theirs was a stormy, on-again, off-again relationship, at least from the time their son was born, in 1996, to the fall 1998 events that formed the basis of the charges against Ryder. Hyer testified that she wanted to let Ryder see his son but did not want to be personally involved with Ryder. Both the State and Ryder submitted evidence of some consensual contact during the relevant period of time. Despite the existence of an intimate relationship with Ryder, Hyer testified that she never let him in her house when her children were there. Her daughter also testified that Ryder was never invited over and into the house.
>
> Hyer testified that on October 5, 1998, she was sleeping on the couch in her combination bedroom/den. Some time between midnight and dawn she was

2

awakened by the sensation of "a hand over [her] mouth." She immediately recognized that the hand belonged to Ryder. He held one hand on her mouth "squishing my face" and with the other hand "pulling my hair, dragging me out the side door." She was prevented from screaming because of his hand over her mouth. She testified, during cross examination, that Ryder brandished a knife when he awakened her and that he threatened to slit her throat if she screamed. With respect to whether she walked, or was dragged out the door, Hyer testified that she didn't resist as much as she might have because "the more I resisted the worse the pain was," and that "once he threatened to slit my throat, that whatever he told me to do, I was going to do it." Nonetheless, she testified that her [sic] she did not willingly comply with his demand that she accompany him outside the house.

Hyer testified that once Ryder got her in her van, which was parked in the driveway, he sat on top of her, punched her repeatedly and "twisted my leg ***so hard *** that I never, ever in my whole life felt pain like that, ever." Once it began to get light outside, Ryder left. Hyer testified that, before he left, "He told me if I called the police he was going to kill me."

Hyer went back into her house. Her daughter came downstairs shortly thereafter and discovered a badly bruised Hyer sitting in the back room crying. Hyer called a friend, who came over. The friend summoned the police on Hyer's behalf. Officer Marrero arrived at Hyer's home close to 11:00 a.m. on October 5. He testified that Hyer repeatedly said she was " afraid that this guy was going to kill her." During his interview with Hyer, "She would put her hands through her hair, and as she did this, wads of hair were mangled through her fingers."

Hyer also testified about the months leading up to the events of October 5th. She told the jury about giving birth to Ryder's child and how bitter he had become when she wrote him a letter explaining that she did not want petitioner to disrupt their child's life. She explained that he had become mean and violent during his recent incarceration, that he frequently drank to excess, and it was becoming increasingly difficult to deal with him regarding their son. She described situations where the petitioner had stalked her and had been removed from her house in the middle of the night by the police, that a temporary protection order had been issued, and he told her he would stalk her and threaten people around her until one of them died.

The Ohio Court of Appeals also noted:

3

Carrie Covender, a long time family friend of Ryder's, testified on his behalf. According to Covender, she saw Hyer twice on Saturday, October 7, 1998. The first time Hyer was walking unassisted to her car carrying two pumpkins, and later that evening Hyer was fast dancing. She testified Hyer had no visible bruises or other injuries on that day, but that if Hyer was injured as severely as the evidentiary photograph indicated, Covender would have noticed it. When confronted with the fact that October 7, 1998, was a Wednesday, Covender was certain that she saw Hyer on a Saturday. She was also certain that she saw Hyer in October because the pumpkin trailer didn't set up until the beginning of October like "when they sold Christmas trees there, it was the 1st of December." She testified she was certain it was the Saturday after Ryder was arrested when she saw Hyer, because she recalled being surprised when Ryder's sister reported the next day that he had been arrested for beating Hyer.

Gregory Kimbrough also testified on behalf of Ryder. He was Ryder's employer, and Ryder lived in a trailer on Kimbrough's property. He testified that Hyer appeared at his house on October 5, 1998, at approximately 2:00 a.m. According to him, she left about a half hour later. Because Ryder had made it clear to Kimbrough that he did not want to see Hyer, Kimbrough falsely told Hyer that Ryder was not there. Kimbrough testified that he called Ryder at approximately 4:00 a.m. and spoke with him, and that at about 7:00 a.m. he awakened Ryder for work. On cross-examination, Kimbrough's trial testimony was challenged by reference to his testimony at the preliminary hearing. At that proceeding he testified that he called Ryder at "about 4:30 a.m. ***, but the phone just kept ringing." At that hearing he also testified that he went to the trailer and heard movement shortly after being unable to reach Ryder by phone, but did not actually make contact with Ryder until seven or seven-thirty in the morning. The jury was specifically cautioned that Kimbrough was not an alibi witness.

During both cross-examination and closing argument, defense counsel focused on the victim's credibility, the motives behind her characterization of petitioner's actions and the events of October 5, 1998. He suggested she had been drinking. He suggested that she intended to send petitioner to jail for as long a time as possible so that he could not interact with their child.

The jury convicted Ryder of violating a temporary protection order, aggravated burglary, intimidation, one count of domestic violence, aggravated menacing, and felonious assault. Petitioner was not convicted of one count of domestic violence, menacing, and kidnaping. Ryder was sentenced to aggregated sentences of fourteen years of imprisonment.

4

An Ohio court of appeals affirmed Ryder's convictions and sentence, and Ryder did not appeal to the Ohio Supreme Court. *State v. Ryder*, No. 99CA007337, 2000WL 1226623 (Ohio Ct. App. Aug. 30, 2000)(unpublished).

While his appeal was pending, Ryder filed his petition for post-conviction relief with the state trial court on November 1, 1999. The trial court denied the petition on November 18, 1999. The state appellate court dismissed the appeal for lack of a final appealable order. After three years, the trial court denied the petition in its Order of August 13, 2004 containing its findings of fact and conclusions of law. In it, the trial court found that the "evidence further revealed that the defendant entered the home of the victim without permission and dragged her into his van where he assaulted her by punching and kicking her." The trial court also found that "the defendant received a fair and impartial trial and defense counsel effectively represented the defendant throughout the proceedings".

The state court of appeals affirmed the trial court's decision. *State v. Ryder*, No. 04CA 008561, 2005 WL 663000 (Ohio Ct. App. March 23, 2005) (Carr, J., dissenting) (unpublished). The Ohio Supreme Court denied Ryder leave to appeal this decision, *State v. Ryder,* 833 N.E.2d 1248 (Ohio 2005) (Lanzinger, J., dissenting) (Table)(unpublished), as not involving any substantial constitutional question.

In its decision affirming the denial of the petition for post-conviction relief, the Ohio Ninth District Court of Appeals considered and rejected the petitioner's argument that his trial counsel's representation amounted to constitutionally ineffective assistance, holding in pertinent part:

> {¶9} Defendant claims that the trial court erred in denying his motion for post-conviction relief because he received ineffective assistance of trial counsel. Defendant maintains that he was prejudiced by his attorney's actions since his

5

attorney failed to interview a friend of the victim who was thought to have evidence undermining the credibility of the victim, the prosecution's main witness.

{¶10} This Court employs a two-step process in determining whether a defendant's right to effective assistance of counsel has been violated. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674. First, the court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." *State v. Calhoun* (1999), 86 Ohio St.3d 279, 289. "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.

{¶11} Second, the defendant must show that the deficient performance of counsel prejudiced the defense. *State v. Bradley* (1989) 42 Ohio St.3d 136, paragraph two of the syllabus. Prejudice exists where there is a reasonable probability that the outcome of the trial would have been different but for the alleged deficiencies of counsel. Id. at paragraph three of the syllabus. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.

{¶12} This court need not address both elements in any particular order - if we find that there was no prejudice to Defendant by defense counsel's acts, we need not address whether defense counsel's acts were actually deficient. *See Bradley,* 42 Ohio St. 3d at 143. In this case, we find that Defendant has failed to show that prejudice resulted from trial counsel's acts. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of sound strategy." *State v. Watson* (Jul. 30, 1997), 9th Dist. No. 18215, at 4. Debatable trial strategies do not constitute ineffective assistance of counsel. *State v. Gales* (Nov. 22, 2000), 9th Dist. No. 00CA007541, at 17.

{¶13} Defendant claims that his attorney's "failure to present evidence favorable to the defense denied Defendant a fair trial, and therefore, denied him effective assistance of counsel." The favorable evidence Defendant refers to is that of Ms. Fesco. In Defendant's petition for post conviction relief, he attached an affidavit of Ms. Fesco in which she stated that she saw the victim the day after Defendant had assaulted her, and the victim told Ms. Fesco that "[Defendant] had beaten her in a bar." The victim had testified that Defendant broke into her house and beat her in her house and then took her into her vehicle where he proceeded to assault her.

{¶14} Based on the victim's testimony and the testimony of multiple other witnesses, Defendant was found guilty of violating a temporary protection order, aggravated burglary, intimidation, domestic violence, aggravated menacing and felonious assault. The testimony Defendant claims his trial counsel was ineffective for not

6

introducing, that of Ms. Fesco, could have bolstered the evidence introduced against Defendant for each of the above counts other than his conviction for aggravated burglary. While it is possible that the jury may have viewed Ms. Fesco's testimony in a light favorable to Defendant, and may have discounted the victim's account of her assault, it is equally possible that the jury would have viewed the same testimony in a negative light to Defendant, supporting the victim's claims that he assaulted her and was violent towards her.

{¶15] Licensed attorneys are presumed competent in Ohio. *State v. Lytle* (1976), 48 Ohio St.2d 391, 397. "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* (1984), 466 U.S. at, 689, quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101, 100 L.Ed. 83. We do not find that Defendant has overcome the presumption that his attorney was employing a sound trial strategy.

{¶16} If defendant has not shown substantive grounds for relief on his ineffective assistance of counsel claim, the trial court is not required to conduct a hearing. *Jackson*, 64 Ohio St.2d at 110.

Judge Carr dissented, stating:

{¶21} I respectfully dissent. Defendant supplied the trial court with an affidavit from a disinterested witness (a friend of the victim's) who provided information that completely contradicted the victim's testimony. The location of the attack is particularly relevant. If the incident in fact occurred at a bar instead of the victim's house, then the defendant could not be convicted of aggravated burglary. I would reverse for a hearing.

On May 9, 2005, petitioner appealed to the Ohio Supreme Court. On September 7, 2005, he was denied leave to appeal and the appeal was dismissed for not involving any substantial constitutional question. Petitioner did not appeal this decision to the United States Supreme Court.

On August 31, 2006, Ryder filed the instant habeas corpus petition in which he raises the same two claims for relief: 1) He was denied effective assistance of counsel when his trial counsel failed to interview a key witness to Ryder's defense; and 2) He was denied due process of law by the trial court's refusal to conduct an evidentiary hearing. In support of these grounds, petitioner has

again submitted the affidavits from the witness, Kelly Fesco, and petitioner, Mark Ryder. Fesco's contains the following statements upon which petitioner relies:

> 2. On or about October 5, 1998, I went to Theresa Hyer's house at 2429 East 34th Street, Lorain, Ohio.
> 3. When I arrived at Theresa's house, Theresa told me that she and Mark Ryder had gotten into a fight at a local bar. Theresa said he had beaten her at the bar.
> 4. After Theresa told me that Mark had beaten her up at the bar, I called the Lorain police. While we were waiting for the police, Theresa said she was not sure what she would tell the police about what had happened between her and Mark.
> 7. Mark Ryder's lawyer or an investigator working for Mark's lawyer never interviewed me. Had anyone, from the prosecutor's office or the defense, asked me about what Theresa said about her fight with Mark, I would have told them that Theresa said Mark beat her up at the bar.

Ryder's affidavit contained the following statements:

> 6. By the time of trial, I knew that Kelly Fesco could support my defense that I did not break into Theresa Hyer's house, kidnap her and beat her in her van. I asked my lawyer to call Kelly Fesco as a witness. During trial, I saw Kelly Fesco in the court house one day while the Sheriff 's deputies were escorting me to court. I told my lawyer that Ms. Fesco was downstairs and should be called to testify.
> 7. My lawyer did not interview Kelly Fesco despite my repeated requests, indicating to me that there was "no need" to talk to Ms. Fesco or call her as a witness.

Ryder's petition was referred to a Magistrate Judge who recommended the petition be denied on June 15, 2007. Ryder timely filed Objections on June 29, 2007. Respondent filed a response on July 12, 2007. The district court adopted the Report and Recommendation in its entirety and dismissed the petition on July 30, 2007.

Although denied by the district court, this Court granted a Certificate of Appealability on both grounds presented.

## II.

In reviewing the denial of a habeas petition, we review the district court's legal conclusions *de novo*, applying the same standard of review to the state court decision that the district court

8

applied. *Bigelow v. Williams*, 367 F.3d 562 (6ᵗʰ Cir. 2004); *See Smith v. Hofbauer,* 312 F.3d 809, 813 (6ᵗʰ Cir. 2002). The provisions of the Antiterrorism and Effective Death Penalty Act, ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. *Lindh v. Murphy*, 521 U.S. 320 (1997).

When a state court has already adjudicated a federal constitutional claim, AEDPA establishes the role of the federal district court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

A state court decision involves an unreasonable application of clearly established federal law if the state court identifies the correct governing legal principle from the decisions of the United States Supreme Court, but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "[T]o be found an 'unreasonable application of ... clearly established Federal law,' the state-court decision must be 'objectively unreasonable' and not simply erroneous or incorrect." *Johnson v. Luoma,* 425 F.3d 318, 324 (6th Cir. 2005) (quoting *Taylor,* 529 U.S. at 409-11 (2000)). A legal doctrine is not clearly established Federal law, as determined by the Supreme Court, unless it is based on "holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision." *Jones v. Jamrog,* 414 F.3d 585, 591 (6th Cir. 2005) (quoting *Taylor,* 529 U.S. at 412).

9

Under the AEDPA, we presume that the state court's factual findings are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003). This Court has recognized that by amending § 2254(d)(1) through the AEDPA, Congress intended to place reasonable state court judgments beyond the scope of federal review. *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

Respondent has conceded that there are no issues raised as to untimeliness, failure of exhaustion, or procedural default, therefore, the Court turns to a review of the merits.

**III.**

The governing standard for determining effective assistance of counsel is found in *Strickland v. Washington,* 466 U.S. 668 (1984). To prove an ineffective assistance of counsel claim, a petitioner must show (1) that his lawyer's performance was deficient and (2) that the deficiency prejudiced the defense. *Id*. at 687. In establishing the first requirement, the petitioner must demonstrate that his lawyer's performance fell below an objective standard of reasonableness as measured by prevailing professional norms. *Id.* at 687-88. Judicial review of the lawyer's performance must be highly deferential. *Id*. at 689. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* Reasonable lawyers may disagree on the appropriate strategy for defending a client. *Bigelow*, 367 F.3d at 570 (6th Cir. 2004)(quoting *Strickland,* 466 U.S. at 689).

It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)(quoting *Strickland,* 466 U.S. at 691). The duty to investigate derives from counsel's basic function, which is " 'to make the adversarial testing process work in the particular case.' " *Towns* , 395 F.3d at 258 (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690)). As further explained by this Court in *Towns:*

> This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *See Bryant v. Scott,* 28 F.3d 1411, 1419 (5th Cir. 1994) (citing *Henderson v. Sargent,* 926 F.2d 706, 711 (8th Cir. 1991)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega,* 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *accord Clinkscale* [*v. Carter*], 375 F.3d [430,] [] 443 [(6th Cir. 2004)].

395 F.3d at 258. The *Strickland* Court explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Id.* at 690-91.

Ryder argues that counsel's actions, in failing to investigate a potentially helpful defense witness, fell below an objective standard of reasonableness because he could not make a reasonable decision without interviewing the witness. Ryder argues that had the jurors heard from Hyer's friend that Hyer lied about what transpired, the testimony of Ryder's other witnesses would have been strengthened. He contends that jurors would have been more inclined to conclude that Hyer had

11

exaggerated events and her injuries as related by other defense witnesses if Hyer's close personal friend provided evidence supporting that conclusion. Rather than find Ryder guilty of felonious assault and aggravated burglary, he contends, there is a reasonable probability that Ryder would have been convicted of only simple misdemeanor assault. Ryder has never claimed that Fesco would have helped exonerate him of all charges, but contends that if Fesco's testimony resulted only in Ryder's acquittal on the aggravated burglary charge, Ryder would be serving eight years, not his current fourteen-year sentence. Additionally, if Fesco's testimony supported other defense testimony indicating that Hyer had fabricated the severity of her leg injury, the felonious assault verdict would probably have been different as well, further reducing Ryder's sentence. For these reasons, Ryder argues the failure to investigate Fesco as a witness prejudiced Ryder's defense and his sentence.

These arguments fail on several levels. First of all, the statements contained in Fesco's affidavit are classic hearsay which, if admissible at all, would not have been admissible at trial for their truth. Clearly, the statements in the Fesco affidavit do not fall outside the definition of hearsay by way of being a prior statement by a witness because the statements are not made by the victim under oath, subject to cross-examination, and subject to the penalties of perjury, Ohio Evid. R. 801(D)(1), nor are the statements made by a party-opponent, Ohio Evid. R. 801(D)(2). The statements are not excepted as statements against penal interest because the victim was available to testify. Ohio Evid. R. 804(B)(3). There is nothing in Fesco's affidavit to suggest that the statements could come in as present-sense impressions, excited utterances, or any of the other exceptions to the hearsay rule where the availability of the declarant is immaterial. Ohio Evid. R. 803.

Secondly, the testimony of the other defense witnesses would not have been bolstered. Fesco was moved to insist that Hyer call the police based upon her appraisal of Hyer's extensive injuries.

12

Her reaction and the exhibits introduced during trial directly contradict Covender's testimony that Hyer's injuries were not extensive. Any testimony about Hyer's statement that she was beaten in a bar contradicts Kimbrough's testimony that he had seen Hyer after the bars were closed, yet did not note any injuries. The statements are not clear and convincing evidence that petitioner beat her at a bar rather than at the victim's home after he broke in, particularly in view of Kimbrough's testimony. It would be an unreasonable decision to call into question the credibility of Kimbrough, a witness whose testimony places the victim, and possibly the petitioner, somewhere other than at Hyer's home at the approximate time Hyer testified she had been beaten at her home.

The district court appropriately found that the state appellate court's conclusion that trial counsel's decision not to interview or call Ms. Fesco as a witness at trial was reasonable and did not rise to the level of ineffective assistance of counsel, was not an objectively unreasonable application of *Strickland* to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented considering the strong evidence against petitioner and the fact that Ms. Fesco's affidavit statements could have worked against the defense, which undermines petitioner's claims of prejudice.

Based upon a review of the record and all of the evidence presented in the trial, it is evident that the defense attorney made a reasonable decision not to interview Fesco. It was reasonable not to consider calling her as a witness and it was a reasonable trial strategy for the defense to discredit the victim's credibility by the testimony of Kimbrough and Covender. Defense counsel knew he could effectively attack the victim's credibility by his cross-examination of the victim which he did at trial. Defense counsel knew, without interviewing her, that Ms. Fesco was the person who called the police after seeing the victim and he knew that she was the only person who could verify parts

13

of the victim's story, that she was, for example, badly beaten. It was a reasonable decision to reject the use of such a witness, who would verify the victim's injuries, as well as undermine the credibility of the other defense witnesses, Kimbrough and Covender. It was a reasoned professional assessment that he didn't "need her" because of the information he had concerning the victim's lack of credibility and the other testimony he had available to him. Based upon the theory of the defense he had adopted, he could not have risked the possible benefits of her testimony, now argued by petitioner. There could be no alternative theory. His goal was to convince the jury that the victim was fabricating the entire October 5, 1998 incident to stop the petitioner from contacting her.

In light of the evidence of Ryder's guilt, we find it was objectively reasonable for petitioner's attorney to have decided that Ms. Fesco was not needed as a witness and that her testimony would have destroyed his chance of presenting his "total innocence" theory for the acts occurring on October 5, 1998 to the jury. Ms. Fesco was not an alibi witness, nor could she testify to his innocence.

In establishing prejudice, Ryder must demonstrate a reasonable probability that the result of his trial would have been different but for his counsel's unprofessional errors. *Strickland,* 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Ryder's defense attorney did not violate his essential duty to his client or cease to function as the counsel guaranteed by the Sixth Amendment. He was not prepared to accept a verdict of guilty on any of the October 5th charges. His goal was to discredit the victim's testimony. He had a reasonable chance of achieving an acquittal on all charges. He developed a theory of the defense the record discloses was effective, if not completely successful, since Ryder was acquitted on some

14

counts. If admitted, the statements of Ms. Fesco would have repudiated the testimony of the other defense witnesses upon which defense counsel had built his defense. A review of the record shows that the defense attorney's performance was not deficient, the result of the trial was fundamentally fair and reliable, and the information submitted regarding counsel's decision is not sufficient to show prejudice under *Strickland*.

## IV.

In support of the second issue raised in his petition, Ryder argues that his petition included evidence demonstrating that he had substantial grounds for relief, therefore, the state trial court's failure to grant a hearing violated his due process rights. Respondent contends that because Ryder attacks a state post-conviction proceeding, rather than his actual detention this ground is not cognizable in a federal habeas proceeding.

Ohio law provides that a defendant is entitled to a hearing in post-conviction actions when his petition for relief has substantial grounds for relief. Ohio Rev. Code § 2953.21(E); *State v. Jackson,* 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). The Fifth and Fourteenth amendments protect any liberty interest conferred upon a citizen by the state from arbitrary deprivation by the state. *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). A writ of habeas corpus may issue to correct an error which results "in the denial of fundamental fairness, thereby violating due process." *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994)(quoting *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir. 1988)).

The district court noted that the state appellate court had addressed this purely as a matter of state law as follows:

> {¶7} A hearing is not automatically required for every petition for post-conviction relief. *See State v. Yauger* (Oct. 6, 1999), 9th Dist. No. 19392, at 3. R.C. 2953.21( C)

15

provides that: "[b]efore granting a petition [for post conviction relief] the court shall determine whether there are substantive grounds for relief." Thus, if after reviewing the evidence and the record, the court does not find substantive grounds for relief, it may dismiss the petition without a hearing. *State v. Jackson*(1980), 64 Ohio St.2d 107, 110. "If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal." R.C. 2953.21( C). In this case, the trial court did file its findings of fact and conclusions of law. The trial court concluded that Defendant did not have any substantive grounds for relief and dismissed Defendant's petition.

{¶8} An appellate court reviews a trial court's denial of a petition for post-conviction relief without a hearing under an abuse of discretion standard. *State v. Watson* (1998), 126 Ohio App.3d 316, 324, citing *State v. Allen* (Sept. 23, 1994), 11th Dist. No. 93-L-123. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.

The state appellate court found that the trial court did not err in denying petitioner a hearing as the petitioner did not fulfill his initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.

The district court properly determined that this claim was not cognizable in this federal proceeding and, even if the claim was to be considered, the decision of the state appellate court would not be found to be either objectively unreasonable or involving an unreasonable application of the law. Petitioner submitted only broad assertions, inadequate as a matter of law to warrant an evidentiary hearing. As discussed above, the testimony which could have been elicited from Fesco does not demonstrate substantial grounds for relief, therefore, the state court's failure to grant a hearing did not violate his due process rights. The proceeding was fundamentally fair.

**V.**

16

For the foregoing reasons, we **AFFIRM** the district court's judgment and **DENY** the Writ.