RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0009p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

PARRISH TOWNS,

               *Petitioner-Appellee/*
               *Cross-Appellant,*

        *v.*

DAVID SMITH, Warden,

               *Respondent-Appellant/*
               *Cross-Appellee.*

Nos. 03-1988/2030

> Appeal from the United States District Court
> for the Eastern District of Michigan at Detroit.
> No. 99-75693—Avern Cohn, District Judge.

Argued: November 2, 2004

Decided and Filed: January 7, 2005

Before: MARTIN and BATCHELDER, Circuit Judges; JORDAN, Senior District Judge.[*]

————————————

## COUNSEL

**ARGUED:** Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Craig A. Daly, Detroit, Michigan, for Appellee. **ON BRIEF:** Laura Graves Moody, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Craig A. Daly, Detroit, Michigan, for Appellee.

————————————

## OPINION

————————————

     BOYCE F. MARTIN, JR., Circuit Judge. David Smith, Warden, appeals the district court's conditional grant of Parrish Towns's petition for a writ of habeas corpus. Because Parrish Towns's two brothers also are involved in this case, we generally will refer to Parrish Towns by his first name. The district court held that Parrish's trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to investigate a witness who had admitted to the police, among others, that he had been involved in the crimes of which Parrish was ultimately convicted and that Parrish had played no part

———————————————————————————

    [*]The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

in those crimes. For the reasons that follow, as well as those expressed in the district court's well-reasoned opinion, we AFFIRM.

## I.

Parrish Towns was convicted and sentenced to life in prison for his role in the 1982 robbery and murder of Wilma Steward. The sole eyewitness to the crime was a man named Roland Higgs, who also was robbed by the perpetrators but who survived. Soon after the murder, the police arrested an individual named Michael Richard on an unrelated charge. At the time of his arrest, Richard was in possession of a handgun, which – after Richard was released from custody – was determined to be the gun used to shoot Steward. The police also learned that Richard had committed a number of robberies in the past. Collectively, this information led the police to suspect that Richard was involved in the Steward robbery and murder, and they obtained and executed a warrant for his arrest.

Although he initially denied any involvement in the crime, Richard later admitted to an officer named Sergeant Brantley that he had, in fact, driven the get-away car, but that "Willie and his brother" were the individuals who actually robbed and shot Steward. Police determined that the "Willie" to whom Richard had referred was Willie Towns, one of Parrish's brothers, whom they proceeded to arrest. Richard subsequently told two other officers, Sergeant Sterr and Lieutenant Morrison, that the "brother" who committed the murder with Willie Towns was Kevin Towns, Parrish's other brother. Based upon this revelation, about which Sterr and Morrison informed Brantley as well as the prosecutor, the police obtained an arrest warrant for Kevin Towns and a search warrant for the Towns residence.

When the police arrived at the Towns residence, they found Parrish, who, at the time, physically resembled Kevin. Both brothers were described as being 5'10" tall and weighing 175 pounds, and there was only a one-year difference in their ages. At this point, for reasons that never have been adequately explained, the police switched their focus from Kevin to Parrish. They asked Parrish to accompany them to the police station, which he did, and proceeded to put him in a line-up. Higgs, the eyewitness, tentatively identified Parrish as one of the perpetrators, but only on the basis of Parrish's height and weight, which – as explained – were similar to Kevin's. Moreover, Higgs emphasized that he "couldn't be sure of any identification" that he made. Later, Higgs firmly identified Willie Towns as the second perpetrator in photographic and live line-ups. Willie and Parrish Towns were ultimately tried jointly for their alleged roles in the Steward murder. It remains unclear why Richard never has been prosecuted for his role in this crime, as well as why the police never executed the warrant for Kevin Towns's arrest.

The prosecutor initially intended to call Richard as a witness at trial – presumably because he had implicated Willie Towns in the Steward murder – but changed his mind at the last minute. After the court granted the prosecutor's motion to strike Richard's name as a prosecution witness, Parrish's defense counsel insisted on having the opportunity to visit Richard in the county jail, where he had been transferred in anticipation of his trial testimony, to determine what Richard's testimony would be and whether it would be beneficial to call him as a witness in Parrish's defense. Counsel explicitly stated to the trial judge that "I have to speak with him first" in order to decide whether to call Richard as a defense witness. Richard was kept in the county jail over night, at counsel's request, but counsel never made any attempt to contact him. The following day, counsel informed the court that he would not be calling Richard as a witness.

Not surprisingly, the prosecution's case against Parrish was weak. There was no direct evidence linking him to the crimes and the strongest evidence against him was Higgs's eyewitness testimony, which was equivocal at best. Parrish's primary defense was alibi, and he called several witnesses who established his whereabouts on the evening in question. First, Marion Wimberly testified that Parrish helped her move throughout that afternoon and evening. She stated that Parrish arrived at her house at 1:00 p.m. and helped her until 7:35 p.m. when she went to get a trailer. When she returned at about 8:00 or 8:15, she stated, Parrish was still there and he continued to help her move until 1:00 a.m., when her grandfather drove him home. Second, Chester McCoy, Wimberly's grandfather, testified that he arrived at Wimberly's home at

6:00 p.m. and that Parrish was with him continuously from that time until 1:00 or 1:30 a.m. Third, Yolanda Wimberly, Marion's sister, testified that Parrish helped in the move, that he arrived at about noon or 1:00 p.m., that she and Parrish went to a restaurant together at 2:00 p.m., and that she was with Parrish until 1:00 or 1:30 a.m. Finally, Parrish's mother testified that Parrish returned home at approximately 1:00 a.m. after helping his friend move, and that he had called her that evening to tell her that the friend's grandfather would be driving him home.

Following this alibi testimony, the prosecution called Sergeant Dunn to the stand as a rebuttal witness. Dunn testified that on the day of his arrest, Parrish denied any involvement in the Steward murder and told him that he was at an arcade on the day of the murder. Although Parrish never testified at trial, he testified at the habeas evidentiary hearing that he initially told the police he was at an arcade because that was his normal routine and he had no specific recollection of his activities on the day of the murder, which was two weeks earlier.

At the conclusion of the trial, Willie and Parrish Towns both were convicted of robbery and first degree felony murder. Approximately nineteen years after his conviction, and after the state courts declined to grant relief, Parrish filed the instant habeas petition in the district court. His petition asserted a number of claims, including a claim for ineffective assistance of trial counsel. The Warden argued in the district court – and continues to argue in this appeal – that Parrish's ineffective assistance claim should be dismissed pursuant to the doctrine of laches because critical witnesses and evidence are no longer available, thereby impairing the Warden's ability to defend against the claim. The Warden also argued – and continues to argue – that the other claims asserted in the petition are barred by procedural default. According to Parrish, however, any procedural default that may have occurred with respect to those claims should be excused because he is actually innocent of the crimes of which he was convicted.

By order of the district court, the magistrate held an evidentiary hearing on the actual innocence issue. Although the hearing focused specifically on actual innocence, much of the testimony elicited also is relevant to Parrish's ineffective assistance claim. For example, attorney Darwin Fair testified about an interview that he conducted with Michael Richard in connection with a state court motion for relief from judgment that he had filed on Parrish's behalf. According to Fair, Richard told him that he was familiar with the facts and circumstances surrounding Parrish's conviction and that he had personal knowledge that Parrish had nothing to do with the offenses for which he had been convicted. Further, Richard indicated to Fair that he was never contacted by Parrish's trial counsel, despite his willingness to testify at trial that Parrish was not involved in the Steward murder. Based upon this information, Fair prepared an affidavit for Richard to sign, although Richard never actually signed it.

Parrish's mother also testified, as she did at trial, that Parrish returned home at approximately 1:00 a.m. on the night in question, after helping his friend move. She also explained that Richard was a friend of her son Willie but not of Parrish. Finally, she testified that on the day before Parrish's trial, she received a phone call from someone identifying himself as Michael Richard, who said that he was calling from jail and informed her that Parrish was not involved in the Steward murder.

At the beginning of the second day of the habeas evidentiary hearing, Parrish's attorney indicated that he intended to call Richard as his next witness. Because Richard had expressed a reluctance to testify without a formal grant of immunity, the magistrate appointed attorney Epstein of the Federal Defender's Office to represent him. After consulting with Richard, Epstein informed the court that Richard was unwilling to testify without a grant of immunity from prosecution and that, if called without immunity, he would invoke his Fifth Amendment privilege against self-incrimination. For reasons that are unknown, the state refused to grant Richard immunity and Richard consequently refused to testify.

Parrish then took the stand and denied any involvement in the crimes of which he was convicted. As previously stated, he explained that he had initially told police that he was at the arcade on the day in question because that was his normal routine and he did not recall his specific activities on the day of the

murder, which was two weeks earlier.  Parrish also testified that after he gave that statement, he talked to Yolanda Wimberly, who reminded him that he had helped her and her sister move on the day of the murder. Parrish then testified about his activities in connection with that move, which mirrored the trial testimony of the other alibi witnesses.

Finally, Michael Martin, an investigator hired by attorney Fair, testified that, in connection with the motion for relief from judgment, he visited Richard in prison to verify the exculpatory evidence that Richard had provided to Fair.  Martin showed Richard the affidavit that Fair had prepared for his signature and Richard confirmed that its contents were true.  According to Martin, Richard also made it clear that he had been involved in some way in the Steward murder, that he, Willie Towns and Kevin Towns were the only individuals involved, and that he and Willie had committed other crimes together.

Martin also testified about his second trip to visit Richard in prison, this time with habeas counsel. During that visit, Martin said, Richard was especially emphatic about Parrish's innocence.  Richard reiterated to Martin that he had expected to testify at Parrish's trial and had not worried at that time about incriminating himself because his attorney had secured a favorable immunity deal.  Richard also again confirmed to Martin that the affidavit that Fair had prepared for him was true and accurate, but that he did not want to sign it because his 1982 immunity deal was no longer in place.

At the conclusion of the hearing, the magistrate granted the parties additional time to consult with the Wayne County Prosecutor's Office to attempt to arrange immunity for Richard so that he could testify. The parties later informed the magistrate that no such deal could be arranged and, accordingly, Richard never testified at the evidentiary hearing.  The magistrate recommended, and the district court agreed, that although Parrish had come close, he had ultimately failed to meet the high burden of proof required to excuse procedural default on actual innocence grounds.  To our knowledge, the state has never justified its continued refusal to grant any sort of immunity to Richard for his role in the Steward murder.  The state has known for over twenty years now that Richard possessed the gun that was used to shoot Steward and that Richard admitted to driving the get-away car.  Yet, despite this evidence, the state has never prosecuted Richard and it appears that it never will.  Under these circumstances, the state's refusal to grant Richard immunity is inexplicable.  Not only did this refusal significantly undermine the district court's ability to determine whether Parrish was actually innocent, it compounded the danger that a murderer will remain free.

Although Parrish's actual innocence argument was rejected, which affected most of the claims asserted in the habeas petition, the district court found that Parrish's ineffective assistance claim, which was unaffected, was meritorious.  The district court held that Parrish's trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to investigate Richard as a potential defense witness.  Accordingly, the court conditionally granted Parrish's petition, ordering the state to retry him within ninety days or release him from custody.  Parrish was subsequently released on bond pending the Warden's appeal.

## II.

### A.  *The Doctrine of Laches*

As an initial matter, the Warden argues that the district court erred in refusing to dismiss, pursuant to the doctrine of laches, Parrish's claim of ineffective assistance of counsel.  Though he concedes that Parrish's habeas petition was timely filed under the Antiterrorism and Effective Death Penalty Act, the Warden argues that the ineffective assistance claim should nevertheless be dismissed because he has suffered prejudice as a result of Parrish's delay in asserting it.  We disagree.

We have previously questioned whether a habeas petition that is timely filed pursuant to the Antiterrorism and Effective Death Penalty Act can be dismissed on laches grounds.  *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (2003) (indicating that "we have found no cases applying a laches or laches-

type defense to a petition timely filed" under the Act). Assuming, without deciding, that it can be dismissed on such grounds, dismissal still would not be warranted unless the Warden satisfies the "heavy burden" of "(1) mak[ing] a particularized showing of prejudice; (2) show[ing] that the prejudice was caused by the petitioner having filed a late petition; and (3) show[ing] that the petitioner has not acted with reasonable diligence as a matter of law." *Id.* (citation and internal quotation marks omitted). Even if that heavy burden is satisfied, dismissal is not mandatory and is appropriate only in the sound discretion of the court. *Berry v. Mintzes*, 726 F.2d 1142, 1146 (6th Cir. 1984).

The Warden asserts that his ability to defend against Parrish's ineffective assistance claim has been compromised by virtue of the fact that Parrish's trial counsel is now deceased and that the prosecutor is unable to remember anything about the case. These vague, conclusory allegations are insufficient to satisfy the Warden's heavy burden of proof. First, the Warden makes no attempt to establish when Parrish's trial counsel died. It is possible that counsel has been dead for many years, which would preclude the Warden from establishing that any prejudice was attributable to Parrish's delay. *See Walters v. Scott*, 21 F.3d 683, 688-89 (5th Cir. 1994) (rejecting the state's laches argument because of the lack of evidence indicating when a supposedly important witness died). Nor has the Warden offered any explanation why the prosecutor's personal recollections about the trial are necessary to respond to Parrish's claim. The records of the trial and habeas proceedings are sufficient to permit the Warden to respond to, and this Court to adjudicate, Parrish's ineffective assistance of counsel claim. Therefore, the district court properly rejected the Warden's laches argument and declined to dismiss the claim.

## B. *Ineffective Assistance of Trial Counsel*

In reviewing the district court's conditional grant of Parrish's petition for a writ of habeas corpus, we review its legal conclusions de novo and its factual findings for clear error. *Miller v. Webb*, 385 F.3d 666, 671 (6th Cir. 2004). No state court has adjudicated the merits of Parrish's ineffective assistance claim. Therefore, the deferential standard of review set forth in section 2254(d) of the Antiterrorism and Effective Death Penalty Act does not apply, as there is no state court conclusion by which our review could be circumscribed. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004). In analyzing Parrish's ineffective assistance claim, we consider "the totality of the evidence – 'both that adduced at trial, and the evidence adduced in the habeas proceeding,'" *Wiggins*, 539 U.S. at 536 (quoting *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000)) (emphasis omitted); *Clinkscale*, 375 F.3d at 436.

Because there is no issue as to exhaustion or procedural default, we turn directly to the merits of Parrish's ineffective assistance claim. The familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs our analysis. The first prong requires Parrish to prove that his trial counsel's representation was deficient in that it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.* at 689. The second prong requires Parrish to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact entitled to de novo review." *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000).

Parrish argues that his trial counsel rendered ineffective assistance in two related ways: first, by failing to conduct a reasonable investigation into Michael Richard; and second, by failing to call Richard as a defense witness. In granting the petition, the district court relied upon the failure to investigate theory. It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S.

at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *See Bryant v. Scott*, 28 F.3d 1411, 1419 (5th Cir. 1994) (citing *Henderson v. Sargent*, 926 F.2d 706, 711 (8th Cir. 1991)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *accord Clinkscale*, 375 F.3d at 443. A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs*, 205 F.3d at 288).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in the recent case of *Wiggins v. Smith*, the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. 539 U.S. at 524-29. According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, we have held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

As in the foregoing cases, Parrish's trial counsel's failure to conduct a reasonable investigation into Michael Richard, "a known and potentially important witness," *Blackburn*, 828 F.2d at 1183, violated Parrish's Sixth Amendment right to the effective assistance of counsel. Parrish has successfully satisfied both the deficiency and prejudice prongs of *Strickland*. With regard to the deficiency prong, the facts as recited above demonstrate that counsel made absolutely no attempt to communicate with Richard, despite requesting that Richard be kept in the county jail so that he could interview him prior to the commencement of the trial. Without even attempting to interview Richard, counsel simply decided not to call him as a witness. That decision was objectively unreasonable because it "was a decision made without undertaking a full investigation" into whether Richard could assist in Parrish's defense. *Combs*, 205 F.3d at 288. By failing even to contact Richard – despite explicitly acknowledging the need to do so – counsel "abandoned his investigation at an unreasonable juncture, making a fully informed decision with respect to [whether to call Richard as a witness] impossible." *Wiggins*, 539 U.S. at 527-28.

The Warden argues that counsel's failure to contact Richard is of no consequence because a reasonable decision not to call him as a witness could have been made solely on the basis of information provided by Parrish. In other words, the Warden speculates that Parrish must have told counsel that Richard could reveal damaging information about him, a danger that outweighed any potential benefit of Richard's testimony. This argument is unpersuasive. First, it is based upon speculation that is totally unsupported – and is even refuted – by the record. The evidence before us unequivocally shows that Richard never implicated Parrish in any wrongdoing, that Richard consistently identified Willie and Kevin Towns as the individuals who robbed and murdered Steward, and that Parrish wanted his counsel to interview Richard

and call him as a witness at trial.  Therefore, there is absolutely no support for the Warden's speculation that Richard's testimony would have been damaging to Parrish's defense.

Second, even assuming, as the Warden speculates, that Parrish did tell his counsel that Richard had some damaging information about him, counsel could not have evaluated or weighed the risks and benefits of calling Richard as a defense witness without so much as asking Richard what he would say if called. Without having any contact with Richard, counsel "was ill equipped to assess [his] credibility or persuasiveness as a witness," or to evaluate and weigh the risks and benefits of putting him on the stand. *Bryant*, 28 F.3d at 1419 (finding ineffective assistance where counsel failed to interview a witness who admitted to committing the crime and maintained that the defendant was not involved).  We do not mean to suggest that under no circumstances could counsel's failure to call Richard as a defense witness be deemed an objectively reasonable decision.  We, like the district court, hold only that it was objectively unreasonable for counsel to make that decision without first investigating Richard, or at least making a reasoned professional judgment that such investigation was unnecessary. *See id.* ("Although factors tending to diminish [the witness's] credibility might support a strategic decision not to call [him] at trial, those considerations do not suggest that [counsel's] failure to investigate [his] testimony was a strategic decision.").

With regard to *Strickland*'s prejudice prong, the record contains ample evidence indicating that but for counsel's ineffectiveness, there is a reasonable probability that Parrish would have been acquitted. Richard has consistently maintained to the police and to others that Parrish was not involved in the crimes for which he was convicted, and that he (Richard) had been willing to testify to that effect at Parrish's 1983 trial.  Had counsel interviewed Richard, he would have discovered as much and probably would have put him on the stand – depending in part upon what other information counsel's investigation uncovered.  In short, there is a reasonable probability that had the jury heard Richard's testimony, it would have acquitted Parrish.

The Warden argues that Parrish has failed to show that Richard would have provided testimony favorable to his defense because Richard's statement to Sergeant Brantley indicated only that "Willie and his brother" robbed and murdered Steward, without specifying the brother's identity.  Not only does this argument overlook the overwhelming evidence of Richard's willingness to exonerate Parrish, it ignores the fact that Richard later gave a second statement to police – this time to Sergeant Sterr and Lieutenant Morrison – in which he stated that the individuals who robbed and shot Steward were Willie Towns, who already had been arrested based upon Richard's prior statement to Brantley, and *Kevin* Towns.

Parrish's claim of prejudice is further supported by the notable weaknesses in the prosecution's case. The Supreme Court has explained that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696; *Clinkscale*, 375 F.3d at 445.  The only evidence linking Parrish to the crime was the eyewitness testimony of Roland Higgs.  We have repeatedly expressed our "grave reservations concerning the reliability of eyewitness testimony," *Clinkscale*, 375 F.3d at 445 (quoting *Blackburn*, 828 F.2d at 1186 (citation omitted)), and Higgs's identification of Parrish in this case was particularly shaky.  As discussed, that identification was admittedly tentative and was based solely on Parrish's height and weight, which were equivalent to those of his brother, Kevin, who apparently never was included in any line-up.  In light of the relatively scant evidence of Parrish's guilt, his counsel's ineffectiveness must be deemed especially prejudicial.

**III.**

For these reasons, the district court's judgment is AFFIRMED and the state has ninety days within which to release or retry Parrish Towns.[1]

---

[1]In light of our adjudication of the ineffective assistance claim, we need not consider the issues raised in Parrish's cross-appeal.