**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0956n.06

**No. 12-1451**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>

**RONALD PIONTEK,**

  **Petitioner-Appellant,**

**v.**

**CARMEN PALMER, Warden,**

  **Respondent-Appellee.**

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**FILED**
Nov 06, 2013
DEBORAH S. HUNT, Clerk

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN**

</td></tr>
</table>

Before: MERRITT, GIBBONS, and McKEAGUE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Ronald Piontek, presently confined at the Michigan Reformatory in Ionia, Michigan, appeals the district court's denial of his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Piontek challenges his convictions of four counts of first-degree criminal sexual assault, Mich. Comp. Laws § 750.520b, and one count of second-degree criminal sexual assault, Mich. Comp. Laws § 750.520c. On direct appeal, the Michigan Court of Appeals rejected Piontek's claim of ineffective assistance of trial counsel. Because the district court properly held that the state court's determination was neither contrary to, nor involved an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984), we affirm the judgment of the district court.

I.

On direct appeal, the Michigan Court of Appeals set forth the following underlying facts.[1]

"This case arises out of allegations that Piontek sexually assaulted the complainant, his niece. Sometime in 1999, when the complainant was nine years old, her cousin sexually abused her. Several months after this occurred, the complainant told Piontek about the incident because she trusted him. A short time after telling Piontek about this abuse, the complainant was spending the night at Piontek's house when he took her to the bathroom in the basement and placed his fingers and tongue into her vagina. The complainant stated that these sexual encounters occurred on at least five different occasions when she would spend the night at Piontek's house." *People v. Piontek*, No. 268048, 2007 WL 1227705, at *1 (Mich. Ct. App. Apr. 26, 2007).

"The complainant also stated that during these encounters, Piontek would unzip his pants and force her to rub his penis with her hands. Moreover, the complainant stated that on another occasion, after accompanying Piontek to work, he tried to have anal sex with her after they returned home, but stopped when she began crying." *Id.*

"In January 2005, the complainant's parents discovered her journals, which contained information about Piontek sexually abusing her. The complainant [later] testified that, in addition to the information about Piontek, the journals contained entries to an imaginary friend to whom the complainant would write about addictions to pain, sex, and drugs. The complainant's mother confronted her about the information concerning Piontek, and the complainant confirmed how Piontek abused her. The complainant's mother reported Piontek's sexual abuse to the police[, and t]he complainant later participated in a forensic interview." *Id.*

"The mother stated that [in 2002,] nearly three years before learning of Piontek's sexual abuse of the complainant, she had learned of the 1999 sexual abuse involving the cousin during a conversation with the complainant. . . . [T]he mother reported this incident to police [and the complainant subsequently participated in a forensic interview regarding the sexual abuse involving the cousin.]" *Id.* "[T]he complainant admitted in . . . [that 2002] forensic interview . . . that the only person who had sexually assaulted her was her cousin." *Id.* at *2. "[The mother] did not seek counseling for the complainant because the complainant did not want to see a counselor. The mother also stated that sometime in 2004, she learned that the complainant had been cutting herself. The complainant explained that during that

---

[1] Piontek has not challenged the state court's factual findings. Therefore, we presume this statement of facts to be correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.")

time, she would often cut her arms in order to 'release pain' and that she began seeing a counselor at school because someone had told the counselor about the cuts." *Id.* at *1.

"[At trial], the complainant admitted that, although she initially testified that Piontek had sexually assaulted her in 2002, she indicated to . . . [the] forensic interviewer at that time that no one had sexually assaulted her besides her cousin. The complainant made this admission after having her recollection refreshed by the police report of the forensic interview." *Id.* at *3. "[T]he complainant [also] admitted that she lied to the [2005] forensic interviewer about how often Piontek would abuse her." *Id.* at *1. "The complainant testified that she was afraid to disclose Piontek's abuse because she did not want to see the same devastation in her family, which occurred when she disclosed her cousin's abuse, happen to Piontek who had a newborn baby. Also, the complainant said that she waited to disclose Piontek's abuse because she was afraid she would get into trouble with her mother and because Piontek was a 'good person' when he was not abusing her." *Id.* at *6.

A Wayne County, Michigan circuit court jury convicted Piontek of two counts of first-degree criminal sexual conduct ("CSC") under Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration with another person under 13 years of age), two counts of first-degree CSC under § 750.520b(1)(b)(ii) (sexual penetration with a person at least 13 but less than 16 years of age who is a relation), and one count of second-degree CSC under § 750.520bc(1)(b)(ii) (sexual contact with a person at least 13 but less than 16 years of age who is a relation). *Id.* at *1. "The trial court sentenced Piontek as a second habitual offender to 20 to 40 years imprisonment for each of his four CSC I convictions and 10 to 22 years imprisonment for his CSC II conviction." *Id.*

Piontek appealed and moved to remand. Piontek made several claims on appeal: "that the trial court erred in failing to review and admit the complainant's counseling records into evidence," *id.* at *2; "that the trial court erred in denying an adjournment where the police officer who Piontek subpoenaed was unavailable," *id.* at *3; that remand was required "on account of newly discovered evidence . . . because, while preparing for appeal, [Piontek] consulted with an expert . . . whose testimony would undercut the complainant's credibility," *id.* at *4; and "that the trial court

-3-

misscored his sentencing guidelines," *id.* at *7.  Piontek also argued that the state appellate court should remand for a hearing under *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973), "so that a record may be developed to determine whether he was denied the effective assistance of counsel." *Id.* at *5.  Piontek claimed on appeal "that he was denied the effective assistance of counsel because of his trial counsel's failure to consult a psychiatric expert concerning problems with the complainant's disclosure and memory of the abuse." *Id.*  Piontek also argued that other grounds established ineffective assistance of counsel: "that trial counsel failed to consult or call a psychiatric expert to determine whether Piontek fit the profile of a sexual predator," *id.* at *7; "that trial counsel failed to 'work up' the case file," *id.*; and "that defense counsel failed to object to the entry of the complainant's journals into evidence," *id.*  The Michigan Court of Appeals affirmed Piontek's convictions and sentence.  *Id.* at *1.

Piontek then filed an application for leave to appeal in the Michigan Supreme Court, asserting the same claims raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Piontek*, 737 N.W.2d 701, 701–02 (Mich. 2007).  Piontek then filed a petition for *habeas* relief in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 2254.  In his petition, Piontek made three claims for relief.  First, Piontek claimed that the trial court violated his rights to a fair trial and due process of law, to present a defense, and to confront his accuser by denying his request to release the school and phsychiatric records of the complainant.  Second, Piontek claimed that the trial court violated his right to present a defense and right to effectively confront his accuser by denying an adjournment when a properly defense-subpoenaed police officer chose not to appear at trial.  Third, Piontek claimed that his trial counsel

-4-

denied him effective assistance of counsel when she failed to consult with forensic psychologists since the case involved a disputed allegation of sexual abuse made by a psychologically disturbed complainant, and since, according to Piontek, such psychologists would have testified that the complainant's disclosures were unreliable. The district court denied *habeas* relief on all of Piontek's claims. *Piontek v. Palmer*, No. 08-15074, 2012 WL 933123, at *1 (E.D. Mich. Mar. 20, 2012). The district court granted a certificate of appealability ("COA") on Pointek's claim for ineffective assistance of counsel, but denied a COA on his remaining claims. Order, *Piontek v. Palmer*, No. 08-15074 (E.D. Mich. Mar. 20, 2012). Piontek appealed. Our review is limited to Pointek's claim for ineffective assistance of counsel. *See* 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (finding a COA a "jurisdictional prerequisite"); *Seymour v. Walker*, 224 F.3d 542, 561 (6th Cir. 2000) (holding that the court may not consider claims for which no COA was issued).

II.

"This court reviews a district court's decision in a *habeas corpus* proceeding *de novo*." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). The amendments to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, "circumscribe" the standard of review federal courts must apply when considering a petition for a writ of *habeas corpus* raising constitutional claims, including claims of ineffective assistance of counsel. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* Under this standard of review, "[i]n order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins*, 539 U.S. at 520 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Id*. at 520–21 (citing *Williams v. Taylor,* 529 U.S. 362, 409 (2003)); *see also Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also West*, 73 F.3d at 84 ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous.").

In *Williams v. Taylor*, 529 U.S. 362 (2003), the Supreme Court interpreted the operative clauses of 28 U.S.C. § 2254(d)(1)—the "contrary to" clause and the "unreasonable application of" clause. *See id.* at 405–09. First, the Court explained the proper application of the "contrary to" clause, employing the federal law of ineffective assistance of counsel as an example:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. Take, for example, our decision in *Strickland v. Washington*. If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be 'diametrically different,' 'opposite in character or nature,' and 'mutually opposed' to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a 'reasonable probability that . . . the result of the proceeding would have been different.' A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. Accordingly, in either of these two

scenarios, a federal court will be unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's 'contrary to' clause.

*Id.* at 405–06 (internal citations omitted). Second, the Court explained that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. The Court emphasized that "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. This distinction between an incorrect application and an unreasonable application of Supreme Court precedent sets a higher bar for obtaining relief than the bar for obtaining relief under *de novo* review. The Court has recently explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted); *see also Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) ("[T]he Supreme Court has very recently made abundantly clear that the review granted by AEDPA is even more constricted than AEDPA's plain language already suggests." (citing *Richter*, 131 S.Ct. at 786)), *cert. denied*, 133 S. Ct. 931 (2013). "Therefore, if it is possible for a fairminded jurist to believe that the state court's rationale comports with the holding in [*Strickland*], then [this court] must deny relief." *Id.* "This is a very high

-7-

standard." *Id*. Indeed, "[i]f this standard is difficult to meet, that is because it is meant to be." *Richter*, 131 S.Ct. at 786.

The two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs our analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The first prong requires a claimant "to prove that his trial counsel's representation was deficient in that it 'fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689). The second prong requires a claimant "to demonstrate that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (alteration in original) (quoting *Strickland*, 466 U.S. at 694). Although a petitioner must prove both deficient performance and prejudice, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one[.]" *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task[,]" *Richter*, 131 S. Ct. at 788 (internal quotation marks omitted); however, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* The Supreme Court recently explained the interaction between *Strickland* and § 2254(d):

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The

*Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted) (quotation marks omitted). Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity." *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

Piontek asserts that he was denied the effective assistance of counsel because his trial counsel did not consult with or call a psychological witness concerning the complainant. In support of this claim, Piontek has cited a report by Terrence Campbell, Ph.D., which analyzes the complainant's testimony in relation to other claims of childhood sexual abuse; a childhood sexual abuse accommodation syndrome ("CSAAS") study; and an affidavit by appellate counsel opining that Piontek should have retained a psychiatric expert. The state court discussed this claim and held that it failed each prong of the *Strickland* test. Since the state court considered both prongs, its conclusion with respect to each is subject to deferential review under § 2254(d). *Cf. Wiggins*, 539 U.S. at 534 (finding that "review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis").

First, the state court found that, "assuming psychiatric experts would testify consistent with Piontek's arguments," the expert testimony that Piontek's trial counsel failed to proffer "would appear inadmissible under MRE 702 because they are not the product of reliable principles and

methods." *People v. Piontek*, No. 268048, 2007 WL 1227705, at *6 (Mich. Ct. App. Apr. 26, 2007).

Michigan Rule of Evidence 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Mich. R. Evid. 702. The state court found Piontek's CSAAS study unreliable because the study concluded "that further study is needed in circumstances presented in cases such as this." *Id.* Moreover, the state court found "to the extent Piontek would present his CSAAS study to determine whether the abuse actually occurred, this would also be improper." *Id.* (citing *People v. Peterson,* 537 N.W.2d 857, 867 (Mich. 1995) (holding CSAAS evidence is not admissible to show whether sexual abuse actually occurred)). As to Campbell's findings about the complainant's disclosure of Piontek's abuse, the state court found that "to the extent Campbell's findings attack the complainant's recollection of events . . . this would arguably amount to an improper attack on the complainant's credibility." *Id.* (citing *Peterson,* 537 N.W.2d at 866). Since Piontek's proffered expert testimony was likely foreclosed by Michigan Rule of Evidence 702 and *Peterson*, the state court concluded that trial counsel's failure to proffer psychiatric expert testimony "cannot be said to have risen to a level of deficient performance." *Id.*

"When considering a petition for the writ, '[t]he federal courts must defer to a state court's interpretation of its own rules of evidence and procedure.'" *Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) (quoting *Miskel v. Karnes,* 397 F.3d 446, 453 (6th Cir.2005)); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's

interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Acknowledging the deference this court owes to the state court, its determination that Michigan Rule of Evidence 702 and *Peterson* foreclose Piontek's proffered expert testimony is unimpeachable.

Although the federal district court denied Piontek's petition, it found that the state court's conclusion regarding the inadmissibility of Campbell's findings "likely is incorrect." *Piontek v. Palmer*, No. 08-15074, 2012 WL 933123, at *8 (E.D. Mich. Mar. 20, 2012). We disagree. The district court based its conclusion on *People v. Beckley*, 456 N.W.2d 391 (Mich. 1990), which states that "aspects of [CSAAS] which specifically relate to the particular behaviors which become an issue in the case are admissible." *Id.* at 399. The "issue" that *Beckely* refers to, however, is inapposite in this case. *Beckley* held "that evidence of behavioral patterns of sexually abused children is admissible for the narrow purpose of rebutting an inference that a complainant's postincident behavior was inconsistent with that of an actual victim of sexual abuse, incest or rape." *Id.* at 399 (internal citations omitted) (internal quotation marks omitted). That holding was reaffirmed in *Peterson*:

> [W]e reaffirm our holding in *Beckley* that (1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty. However, we clarify our decision in *Beckley* and now hold that (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility.

*Peterson*, 537 N.W.2d 857, 859 (Mich. 1995). The *Beckley* holding supports, not impugns, the state court's conclusion that evidence regarding CSAAS proffered by Piotnek would have been

-11-

inadmissible. It would have been incomprehensible for any defense counsel to proffer the study to rebut an attack on complainant's credibility, and the study was inadmissible for any other purpose. *See Beckley*, 456 N.W.2d at 399; *Peterson*, 537 N.W.2d at 859. As such, the state court concluded that Piontek's trial counsel's failure to proffer likely inadmissible expert testimony "cannot be said to have risen to a level of deficient performance." *Piontek*, 2007 WL 1227705, at 6. This conclusion is a reasonable application of the first prong of *Strickland*. Defense counsel does not perform deficiently under *Strickland* by failing to undertake futile tasks or raise meritless claims. *See McAuliffe v. United States*, 514 F. App'x 542, 549 (6th Cir. 2013).

The state court also held that Piontek did not show prejudice as required under *Strickland*'s second prong. "*Strickland*'s test for prejudice is a demanding one," *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), and requires a petitioner to prove that the "likelihood of a different result" is "substantial, not just conceivable," *Richter,* 131 S.Ct. at 792. Even assuming *arguendo* that trial counsel was deficient, Piontek must show "that counsel's errors were so serious as to deprive [him] of a fair trial," *Strickland*, 466 U.S. at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Piontek claims that expert testimony would have not only helped the jury to understand the complainant's "process of recall and disclosure," but also altered the verdict. The state court rejected this argument, finding that trial counsel's failure to call an expert psychological witness "was not outcome determinative in light of defense counsel's effective cross-examination of the complainant during which the complainant admitted inconsistencies in her recollection and disclosure of events regarding Piontek's abuse." *Piontek*, 2007 WL1227705, at *6.

Trial counsel subjected the complainant to sustained cross-examination regarding her motives, her recall of the sexual assaults, and the consistency and reliability of her disclosures. For instance, trial counsel elicited from the complainant an admission that her journals contained commingled passages of observations, fiction, and lyrics and were partly addressed to imaginary friends. Trial counsel also elicited the complainant's admission that only one of her three journals mentioned Piontek and that the journals expressed disdain for several of the complainant's family members and acquaintances. Trial counsel further drew out inconsistencies between the complainant's accounts of the frequency of and circumstances under which the sexual assaults took place. Then, during closing arguments, trial counsel vigorously contended that the complainant's testimony was unreliable; that the complainant had alternative motives for the allegations of sexual assault; that the diaries were unreliable as to the complainant's experiences and, in particular, to her relationship with Piontek; and that the details of the complainant's disclosure and testimony regarding the sexual assaults were too sparse to be trustworthy. The state court determined that defense counsel's cross-examination defeated any argument that Piontek was denied a fair trial because of the want of expert testimony. Applying the deference and latitude required by § 2254(d), the state court provided a "reasonable argument" that Piontek was not prejudiced by trial counsel's performance.

In sum, the state court made reasonable determinations that Piontek cannot satisfy either prong of *Strickland*'s standard for ineffective assistance of counsel. *See Richter*, 131 S. Ct. at 788. Accordingly, the district court's denial of *habeas* relief to Piontek is affirmed.