IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 4, 2020 Session

**PATRICK WADRI v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Williamson County**
**Nos. CR-180277, 2015-CR-4523, 2017-CR-1317, 2017-CR-1330**
**Deanna B. Johnson, Judge**

————————————————————

**No. M2020-00066-CCA-R3-PC**

————————————————————

Petitioner, Patrick Wadri, entered an open plea in the General Sessions Court of Williamson County to two counts of driving on a suspended license, one count of use of a stolen license plate, and one count of failure to appear. The General Sessions Judge imposed an effective sentence of eleven months and twenty-nine days, suspended to probation after the service of thirty days in incarceration. Petitioner subsequently sought post-conviction relief on the basis that he received ineffective assistance of counsel and that his guilty plea was unknowing and involuntary. After a thorough review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Brooke E. Howlett, Nashville, Tennessee, for the appellant, Patrick Wadri.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Kim Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner was charged in general sessions court with three separate cases for two counts of driving on a suspended license, one count of use of a stolen license plate, and one count of failure to appear. He was initially represented by Teresa Smith, who noted in her case file that Petitioner was from Uganda. The following day, on March 29, 2017,

Petitioner appeared in general sessions court with a group of defendants.[1]  The rights of one accused were given by the judge to Petitioner and the remaining defendants as a group.  Petitioner's case was discussed with the judge briefly by Ms. Smith, who informed the judge that Petitioner had not reached a decision about the resolution of his case, having rejected all of his available options including probation.  By this time, however, Petitioner was represented by plea counsel, his third appointed attorney.  The judge ordered Petitioner into the courtroom to determine how he wanted to proceed on his case.

Once Petitioner arrived in the courtroom, the judge inquired whether Petitioner wanted to enter a guilty plea or proceed with a preliminary hearing or probable cause hearing.  Petitioner explained that he had already spent eight days in jail and that it would be hard to wait for additional time if a preliminary hearing could not be held within a few days.  The judge explained there was a "good chance" of a preliminary hearing happening within a few days.

The judge thoroughly explained the available options to Petitioner, which included a plea deal with the State, the entry of a guilty plea with the judge to determine the length and manner of service of the sentence, or a preliminary hearing at which the judge would determine if there was probable cause to send the case to the grand jury.  The judge explained that if there was a preliminary hearing, it could mean that Petitioner would remain in jail for several months.  Petitioner expressed concern about remaining incarcerated, and again told the judge that he was not sure what he wanted to do with his case.  The judge informed Petitioner that if he did not make a decision about what option he wanted, the judge would make the decision for him to have a preliminary hearing.

Petitioner and plea counsel discussed the options privately before plea counsel informed the judge that Petitioner would plead guilty to the charges and have a sentencing hearing.  Petitioner signed the required waivers of the indictment, presentment and jurisdiction before the judge identified the charges to which Petitioner would plead guilty.  The judge confirmed that Petitioner was aware of the possible maximum punishment for each offense and asked Petitioner if he had any questions about his rights.  Petitioner responded, "No."

The judge accepted the pleas.  Petitioner was advised of his rights and asked whether he was entering the plea voluntarily, knowingly, and intelligently.  Petitioner answered affirmatively.  The judge asked if there was a "factual basis" for the plea.  The parties, without explaining the underlying facts, answered in the affirmative.

---

[1] There was not a court reporter present in general sessions court.  The technical record contains an audio CD of the proceedings.

The judge immediately held a sentencing hearing. The State did not call any witnesses. Petitioner testified he was a stone mason and that his driver's license got suspended in 2015. After the initial suspension, his license was reinstated. Petitioner was again charged with driving on a suspended license, this time in Smith County. Petitioner claimed that he did not receive a letter from his lawyer explaining that he missed a court date.

Petitioner explained the charge alleging that he used stolen plates. Petitioner testified that he was given a truck in exchange for some work he did at a friend's yard in preparation for a wedding. Petitioner acknowledged that the plate on the truck was not registered in his name and that he could call his friend to testify if necessary.

On cross-examination, Petitioner acknowledged that he had unpaid fines and that he was aware that if he paid those fines, his license would be reinstated and the suspension charge would be dismissed. Petitioner also admitted that he was given more time to pay and failed to do so because it was "complicated" by an "immigration" issue. Petitioner tried to explain that his license was reinstated but that the DMV failed to recognize the reinstatement because of his "immigration status." Petitioner continued to drive even though he knew his license was suspended because he had to drive to be able to perform his job.

Petitioner claimed that the failure to appear charge resulted after he failed to notify his lawyer, Larry Drolsum, of his new mailing address. Petitioner expressed frustration that probation would prohibit him from going to his "home country" of Uganda and to India for a college reunion. Petitioner informed the judge that he had "served time" and wanted "the charges to [be] dismissed."[2]

The judge sentenced Petitioner to an effective sentence of eleven months and twenty-nine days, suspended to probation after the service of thirty days in incarceration. Petitioner did not appeal the decision to the Circuit Court. Petitioner filed a timely petition for post-conviction relief. The petition alleged that he received ineffective assistance of counsel in the general sessions court and that his guilty plea was involuntary and unknowing.

The post-conviction court determined that the petition stated a colorable claim and ordered Petitioner to file an amended petition within 30 days. Petitioner filed several

---

[2] At this point, the judge cautioned plea counsel to discuss with Petitioner the consequences of committing perjury in open court. The judge expressed concern that Petitioner admitted he had money to travel to Uganda and India but claimed that he was indigent on his affidavit of indigency. Petitioner ultimately explained that he had friends who would pay his fines.

- 3 -

amended petitions before the post-conviction court held an evidentiary hearing. At the evidentiary hearing, plea counsel testified that she was licensed to practice law in November of 2016 and appointed to represent Petitioner in March of 2017. She claimed that she had already represented nearly 100 clients in general sessions court by that time.

Plea counsel admitted that she had difficulty recalling everything that happened during Petitioner's case in general sessions court because it had been nearly two years. Plea counsel explained that she was appointed to represent Petitioner during a bond docket and met him on the day that he entered his guilty pleas.

Plea counsel recalled that she met with Petitioner while he was in lockup and that they discussed his pending charges. According to plea counsel, Petitioner denied receiving notice of the failure to appear charge. Plea counsel remembered that Petitioner's case seemed "very odd" because she learned at the docket call on the day of the plea hearing that she was the third attorney appointed to represent Petitioner on misdemeanor charges. Plea counsel explained that she spoke to Ms. Smith that day and learned that Mr. Drolsum, another lawyer in Ms. Smith's office, had originally been appointed to represent Petitioner on the first charge of driving on a suspended license. When Petitioner failed to appear for this charge, Mr. Drolsum was withdrawn as counsel. Ms. Smith was appointed to represent Petitioner on March 28, 2017 but was unable to resolve the case because Petitioner could not decide how he wanted to resolve the case. The case was continued to the next day, March 29. On March 29, Ms. Smith discovered that plea counsel had been appointed to represent Petitioner on a case, she suggested that plea counsel assume representation of Petitioner on all of his cases. Ms. Smith gave her case file on Petitioner to plea counsel.

Plea counsel testified that she specifically remembered asking Ms. Smith and Mr. Drolsum about the failure to appear charge after Petitioner insisted that he never received notice of the hearing. Ms. Smith and Mr. Drolsum provided plea counsel with a copy of the letter that was mailed to Petitioner to inform him of the court date. Their office did not receive a notice from the post office that the letter was not delivered.

Plea counsel explained further that all three lawyers talked to Petitioner while he was in the holding cell on March 29. When Petitioner was shown a copy of the letter, he denied that he received it and insisted that the letter contained the improper zip code. Plea counsel agreed that there was no indication that the letter was not delivered and recalled that Petitioner had provided his address on several different forms and that "they were all different." Plea counsel acknowledged that it would not be "particularly difficult" for the State to prove that Petitioner knowingly failed to appear.

- 4 -

Plea counsel recalled that Petitioner told her the charge regarding the stolen plates was merely a "mistake." According to plea counsel, there was "no legal research to do on this kind of case." Additionally, plea counsel recalled that Petitioner admitted that he was driving on a license that was suspended for nonpayment of fines and fees. Plea counsel denied any knowledge of Petitioner's immigration status or its effect on his license. In fact, the only notation she recalled seeing was "supports family in Uganda" on Ms. Smith's notes. Plea counsel had no reason to question Petitioner's citizenship status and felt that it was "a little discriminatory" to do so. She explained that when she had a client charged with driving on a suspended license she would ask them if they could get a license. If the client answered no, it could be because they are "not in this country legally."

Plea counsel denied that Petitioner expressed any concern about how his guilty plea would affect his immigration status. She also denied that she told Petitioner his offenses were too minor to affect his immigration status. She explained:

> I wouldn't know that knowledge especially in the Trump era when he was just elected and [his] campaign promises were to deport illegal immigrants. I can't – we did not know what was happening. I would not say it's too minor because at that time we had no clue and I'm not experienced enough in immigration law to give that opinion.

In fact, plea counsel claimed that if a client expressed immigration concerns, she would arrange a phone consultation or schedule a referral with an immigration attorney.

Plea counsel testified that she discussed the options with Petitioner with regard to whether he wanted to go to trial or plead guilty. Plea counsel recalled the State made an offer for probation after service of thirty days in jail. Plea counsel recalled that Petitioner was unhappy with this offer because he wanted to be released immediately. She also recalled that he was worried about how being on probation would affect his ability to travel outside the country. After a long day, Petitioner decided to accept the State's offer. Plea counsel recalled that the prosecutor wrote up the plea agreement and left the courthouse. Sometime later, Petitioner changed his mind. Petitioner's case became the last case on the docket that day. Plea counsel recalled that the judge brought Petitioner back into the courtroom to discuss the options. Petitioner eventually decided to plead guilty.

Plea counsel explained that the factual basis for the plea was not recited by the State in general sessions court. She explained that the judge asks "the defense attorney is there a factual basis for the plea," and asks the defendant if there is a basis for the entry of the plea. If both of those are answered in the affirmative, the judge will accept the plea.

Plea counsel did not recall Petitioner arguing that the facts were not sufficient to support the failure to appear charge at the sentencing hearing. Plea counsel stated that if Petitioner had challenged the factual basis for the plea, she would have made a motion to withdraw the plea.

Further, plea counsel did not recall Petitioner making any statements with regard to his immigration status at the sentencing hearing. Plea counsel felt certain that if Petitioner had mentioned his immigration status, the judge would have advised Petitioner pursuant to *Padilla v. Kentucky*, 559 U.S. 356 (2010). Plea counsel recalled the judge's concern with Petitioner's potential perjury at the hearing.

During plea counsel's testimony, post-conviction counsel explained to the post-conviction court that Petitioner did not have a "pending issue with the immigration court."

Petitioner testified that he was born in Uganda and gained political asylum in the United States in 2015. He was employed as a stone mason and had six years of education beyond high school with degrees in business, international affairs, and conflict resolution. Petitioner admitted that this was not his first criminal arrest. He acknowledged that he had prior arrests for driving on a suspended license and was arrested one time by immigration authorities.

Specifically, Petitioner explained that he was stopped in 2014 and given a citation for driving without a license. Petitioner also received a failure to appear charge, was held overnight, and given a bond. He was told by his "Nashville lawyer" that there were potential immigration consequences as a result of his arrest but that he was able to negotiate a settlement of the case in 2016 and avoid immigration problems. Petitioner admitted that his experience in 2014 made him aware that he was facing potential immigration issues with the current charges.

Petitioner explained that he was arrested on March 23, 2017, for driving on a suspended license. His original bond amount of $5000 was increased to $10,000 because of his outstanding failure to appear charge. Because Petitioner could not make bond, he remained in custody.

Petitioner recalled meeting with Ms. Smith and discussing his concerns over how a guilty plea and/or probation would affect his immigration status. Petitioner acknowledged that he did not plead guilty that day. He met plea counsel for the first time in a room with Ms. Smith and Mr. Drolsum shortly before his plea. At this meeting, Petitioner explained that he did not receive notice of the hearing that led to the failure to

appear charges. Petitioner understood that plea counsel would now represent him on all the charges. Petitioner testified that he expressed concern about his immigration status with plea counsel and recalled plea counsel's "frustration" with his hesitation to plead guilty. He explained that he "knew what immigration implications were and [that he] expressed it to the two attorneys before [plea counsel]." Petitioner insisted that "the facts were clear" that he was not guilty of the offenses. Petitioner insisted that plea counsel told him the charges would not affect his immigration status because they were "insignificant."

Petitioner insisted that the stolen plate charge was "too harsh" for the facts. Petitioner explained that it was very difficult to make a decision about his case. He admitted that he ultimately pled guilty and that the judge "did a really good [job] explaining things" to him prior to the plea. Petitioner admitted that he told the judge he did not have any questions about his case or the proceedings and that he was pleading guilty without being coerced.

Petitioner did not recall being asked about his finances but did recall talking to plea counsel about whether he could pay the bond. Petitioner was under the impression that both sides would present "facts" and that the judge would "weigh" the facts presented prior to making a decision on the case. Petitioner was also surprised that plea counsel did not make a counter offer on the sentencing agreement. Petitioner admitted that he completed his sentence and probation. However, he claimed that he would not have pled guilty if he knew everything that he knew now.

In a written order, the post-conviction court denied relief. The post-conviction court detailed all the interactions between plea counsel and Petitioner. The post-conviction court addressed Petitioner's insistence that the notation that Petitioner 'supports his family in Uganda' on a previous attorney's file should "have caused [plea] counsel to investigate the possible immigration consequences of a guilty plea." The post-conviction court determined "such thinking would require defense attorneys to 'stereotype' or profile their clients." The post-conviction court did not "accept" this argument and found that Petitioner did not prove plea counsel was ineffective.

With regard to prejudice, the post-conviction court found Petitioner admitted that he was aware there would be "immigration consequences" to his plea and that he was advised thoroughly by the judge prior to the entry of the plea. Additionally, the post-conviction court noted that Petitioner did not "put forth any evidence that he will become ineligible for permanent resident status and be deemed inadmissible to the United States" but "merely speculated that such results could occur." The post-conviction court determined Petitioner failed to show that but for plea counsel's error he would not have pled guilty. With regard to the voluntariness of the plea, the post-conviction court

determined that Petitioner was intelligent, familiar with the legal process, was represented by competent counsel, received appropriate advice from counsel about the decision to plead guilty, and had reasons to plead guilty. The post-conviction court described Petitioner as having "buyer's remorse" about the entry of the plea that was entered voluntarily, intelligently, and knowingly. It is from the denial of post-conviction relief that Petitioner now appeals.

*Analysis*

On appeal, Petitioner argues that he received ineffective assistance of counsel because plea counsel failed to inform Petitioner of potential immigration consequences of pleading guilty, failed to adequately investigate the charges against Petitioner, failed to discuss with Petitioner options other than a guilty plea and the possible consequences of his guilty plea, and failed to provide mitigating information at Petitioner's sentencing hearing. Petitioner also argues that the post-conviction court erred when it found that Petitioner entered a knowing, voluntary, and intelligent guilty plea. The State argues that the post-conviction court properly denied Petitioner relief on his claim of ineffective assistance of counsel. The State further argues that Petitioner entered a knowing and voluntary guilty plea with the effective assistance of counsel.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*I. Ineffective Assistance of Counsel*

Petitioner raises several complaints about plea counsel's representation. Specifically, Petitioner argues that the post-conviction court erred when it failed to find that plea counsel provided ineffective assistance when she failed to provide Petitioner information about the possible immigration consequences of a guilty plea in violation of *Padilla v. Kentucky*, 559 U.S. 356 (2010). Petitioner also argues that plea counsel failed to adequately investigate the charges against Petitioner and the possible defenses against those charges, failed to discuss options available to Petitioner other than a guilty plea, and failed to provide any mitigating information at Petitioner's sentencing hearing. Lastly, Petitioner argues that the post-conviction court erred when it found that Petitioner did not establish prejudice.

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S.

364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "[I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### a. Immigration Consequences

Petitioner argues that plea counsel provided ineffective assistance of counsel because she failed to provide Petitioner information about the possible immigration consequences of a guilty plea in violation of *Padilla*. *Padilla*, 559 U.S. at 356. The State argues that Petitioner failed to show that plea counsel's advice was deficient and therefore ineffective.

In *Padilla*, the defendant's counsel was deficient because she "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute." *Id*. at 368. The United States Supreme Court stated in *Padilla* that

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice [Alito]), *a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences*. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

> Accepting his allegations as true, Padilla has sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland*. Whether Padilla is entitled to relief on his claim will depend on whether he can satisfy *Strickland*'s second prong, prejudice, a matter we leave to the Kentucky courts to consider in the first instance.

*Padilla*, 559 U.S. at 369 (emphasis added).

Here, Ms. Smith's one page of notes contained two references to the possibility that Petitioner might face consequences due to his immigration status. The notes said "from Uganda" and "supports family in Uganda." Ms. Smith gave these notes to plea counsel when she assumed representation of Petitioner the day prior to the entry of his guilty plea. Petitioner testified at the post-conviction hearing that he explained to plea counsel that he did not want to plead guilty because of possible implications to his immigration status and that he discussed his concerns with plea counsel. Plea counsel admitted that she received and read Ms. Smith's notes, but did not take any action based on the notes. Plea counsel explained that she was not an immigration lawyer but that she saw no need to refer Petitioner to someone to discuss the immigration consequences of a guilty plea. During testimony from Petitioner at his sentencing hearing, Petitioner clearly referenced his immigration status. This Court has held that under *Padilla* plea counsel has a "duty to investigate and properly advise [Petitioner] about the consequences of his guilty pleas, including his presumptive inability to re-enter this country." *Rigoberto v. State*, No. M2011-02690-CCA-R3-PC, 2012 WL 6115530, at *6 (Tenn. Crim. App. Dec. 10, 2012), *perm. app. denied* (Tenn. Apr. 11, 2013). Plea counsel made no attempt to do that in this case. Given that counsel failed to investigate and properly advise the Petitioner, we conclude that counsel rendered deficient performance.

Plea counsel had a duty to inform Petitioner that a guilty plea may have immigration consequences. *Id*. She failed to do so, therefore the deficient prong of *Strickland*, is satisfied. However, Petitioner is not entitled to post-conviction relief unless he can demonstrate prejudice as a result of plea counsel's deficiency. *See Strickland*, 466 U.S. at 687.

Although the record shows that plea counsel did not advise Petitioner of possible immigration consequences of a guilty plea, the record is clear that Petitioner was aware of the possibilities and chose to plead guilty anyway. Petitioner testified that a "Nashville attorney" advised him of possible consequences of a guilty plea when Petitioner faced similar charges there. Therefore, Petitioner has not shown that but for plea counsel's failure to inform him of possible consequences it would have resulted in a different outcome. *See Burns*, 6 S.W.3d at 463. Petitioner has failed to show prejudice and is not entitled to relief on this issue.

### b. Investigate Charges and Defenses

Petitioner argues that plea counsel did not adequately investigate the charges and possible defenses in his case. The State argues that the investigation was reasonable.

We first note that Petitioner cites no legal authority in this section of his brief as to what duty plea counsel has to investigate. As a result, Petitioner risks waiver of this

issue. *See* Tenn. Ct. Crim. App. R. 10(b). However, Petitioner does cite to *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) in his previous argument regarding immigration. The court in *Towns* states that plea counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations necessary." *Id*.

Here, Petitioner asserts that Petitioner repeatedly disputed the charges against him to plea counsel, but plea counsel "failed to investigate and consider the option of defending the charges against him at trial." Petitioner contends that he never received notice of a court date and that the stolen plate charge could be explained. However, plea counsel obtained a letter that was sent to Petitioner by Mr. Drolsum in which the court date was specifically referenced. Mr. Drolsum, plea counsel, and Ms. Smith all met with Petitioner at the same time. The post-conviction court stated that "[t]he [c]ourt does not find Petitioner credible on this issue [concerning notice of trial date]." This Court will not substitute its own inferences for those drawn by the post-conviction court. *Honeycutt*, 54 S.W.3d at 766-67.

As to the stolen plate charge, Petitioner maintained at his sentencing hearing that he could identify the person from whom he received the truck to testify on his behalf. "When a petitioner contends that [plea] counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the [post-conviction] evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Without the truck's previous owner's testimony at the post-conviction hearing, "the petitioner fails to establish the prejudice requirement mandated by *Strickland*." *Black*, 794 S.W.2d at 758.

Petitioner submitted no defense as to the charge of driving on a suspended license. At his sentencing hearing, Petitioner admitted that he continued to drive knowing his license was suspended. He further stated that he was aware the charges would be dismissed if he paid the fines and fees.

Petitioner has failed to demonstrate deficient performance or prejudice. Petitioner is not entitled to relief.

### c. Options Other Than Guilty Plea

Petitioner argues that plea counsel failed to discuss options other than a guilty plea and failed to ensure Petitioner understood the consequences of his guilty plea.

A guilty plea "must be entered knowingly, voluntarily, and intelligently." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (citing *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977). Relevant factors are whether Petitioner was represented by competent

counsel, the opportunity to confer with counsel about the options available to him, the extent of advice from counsel concerning the charges against him and the penalty imposed, and the reasons Petitioner pled guilty. *Blankenship v. State*, 858 S.W.2d 897, 904-905 (Tenn. 1993).

Petitioner avers that plea counsel did not discuss options available to him other than a plea hearing and did not explain to him what a preliminary hearing was. However, the record clearly shows that Petitioner had the opportunity to converse with three attorneys over a period of two days. Petitioner was familiar with the criminal justice system as he had been charged with and convicted of similar charges previously. At plea counsel's behest, the judge again questioned Petitioner whether he wanted to plead guilty or have a preliminary hearing and explained what would happen if he chose to wait for a preliminary hearing. After considering his options over a period of two days, Petitioner decided to plead guilty so he did not have to spend any more time in jail.

Based on the information above, Petitioner has not shown that he suffered prejudice. *See Lockhart*, 474 U.S. at 59. Petitioner is not entitled to relief.

### d. Mitigation Information

Petitioner argues that plea counsel failed to provide mitigating information at Petitioner's sentencing hearing. The State argues that Petitioner failed to demonstrate prejudice or identify what proof counsel should have presented at the sentencing hearing.

We note that post-conviction counsel has pointed to no legal authority as to what plea counsel's duty to Petitioner was to present mitigating information at the sentencing hearing. Petitioner has waived the issue. *See* Tenn. R. Ct. Crim. App. 10(b).

### II. Guilty Plea

Petitioner argues that Petitioner did not knowingly, voluntarily, and intelligently enter his guilty plea. Specifically Petitioner argues that the plea court did not determine whether Petitioner understood the consequences of his plea as required by Tennessee Rule of Criminal Procedure 11. Petitioner further argues that there was not a factual basis for his guilty plea. The State argues that Petitioner entered a knowing and voluntary guilty plea with the effective assistance of counsel.

To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents

a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This Court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship*, 858 S.W.2d at 905. "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "Before a Tennessee court can accept any guilty plea, the court must determine that the defendant is pleading guilty voluntarily and with an understanding of the nature of the plea and its consequences" and that there is an adequate factual basis for the plea. *Hicks*, 983 S.W.2d 240 at 247. A defendant's solemn declaration in open court that his plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

A plea is involuntary if the accused "is incompetent or otherwise not in control of his mental facilities" when the plea was entered or if the plea was based on "ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Blankenship*, 858 S.W2d at 904 (quoting *Boykin*, 385 U.S. at 242-43). In evaluating the knowing and voluntary nature of a guilty plea, the standard is whether the plea represents a "voluntary and intelligent choice" among alternative courses of action. *Alford*, 400 U.S. at 31. "Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." *Mackey*, 553 S.W.2d at 341. However, "the "factual basis" requirement from *Mackey* has supervisory rather than constitutional roots, and the petitioner's claim that the judge erred by entering judgment on his guilty plea without a proper factual basis is therefore not cognizable in a post-conviction proceeding." *Bentley v. State*, 938 S.W.2d 706, 712. The judge's failure to follow Rule 11 may contribute to the totality of the circumstances when reflecting on a knowing, voluntary, and intelligent plea. *See Jennifer Womac v. State*, No. E2017-00660-CCA-R3-PC, 2018 WL 3217733, at *9 (Tenn. Crim. App. July 2, 2018), *perm. app. denied* (Tenn. Nov. 15, 2018). The factual basis requirement for a guilty or nolo contendere plea primarily exists to ensure

that a defendant's plea is made with an understanding that the admitted conduct actually constitutes the offense that is charged. *See McCarthy v. United States*, 394 U.S. 459, 466-67 (1969). In other words, the factual basis focuses upon a defendant's understanding about the applicable law in relation to the facts being admitted. *State v. Lord*, 894 S.W.2d 312, 316 (Tenn. Crim. App. 1994).

With regard to a court accepting a guilty plea, Tennessee Rule of Criminal Procedure 11 states that:

(b) Considering and Accepting a Guilty or Nolo Contendere Plea.

(1) Advising and Questioning the Defendant. Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:

(A) The nature of the charge to which the plea is offered;

(B) the maximum possible penalty and any mandatory minimum penalty;

(C) if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;

(D) the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E) the right to a jury trial;

(F) the right to confront and cross-examine adverse witnesses;

(G) the right to be protected from compelled self incrimination;

(H) if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I) if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offence to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the

presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury;

(J) if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea; and

(K) if the defendant pleads guilty or nolo contendere to an offense for which he or she will receive an additional sentence of community supervision for life, the fact that he or she will receive the additional sentence, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the community supervision for life sentence and its consequences.

(2) Insuring That Plea Is Voluntary. - Before accepting a plea of guilty or nolo contendere, the court shall address the defendant personally in open court and determine that the plea is voluntary and is not the result of force, threats, or promises (other than promises in a plea agreement). The court shall also inquire whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the district attorney general and the defendant or the defendant's attorney.

(3) Determining Factual Basis for Plea. - Before entering judgment on a guilty plea, the court shall determine that there is a factual basis for the plea.

In this case, Petitioner relies heavily on the argument that the judge did not adhere to Tennessee Rule of Criminal Procedure 11. The judge conducted a lengthy colloquy with Petitioner, and advised Petitioner of his constitutional rights and the consequences of his guilty plea. The judge asked Petitioner what his decision was, and after consulting plea counsel, Petitioner pled guilty to each charge. The judge asked Petitioner if he was aware of the charges and the maximum punishment for each and if he pled guilty of his own free will. Petitioner responded affirmatively. The judge asked if anyone pressured, threatened or promised something to get Petitioner to plead guilty. Petitioner responded "[n]o, your honor." The judge asked if there was a factual basis for each of the pleas and received an affirmative response. The judge accepted the pleas as "knowingly, intelligently, and voluntarily given," and began Petitioner's sentencing hearing.

- 16 -

The record shows that Petitioner was highly intelligent with multiple post-secondary degrees. Petitioner has a criminal history that indicates his familiarity with criminal proceedings. Petitioner admitted that he previously faced charges in Nashville, McMinnville, and Wilson County; the charges being similar to the ones in this case. Petitioner also faced charges in Williamson County General Sessions Court previously. Petitioner had the opportunity to confer with multiple attorneys. Petitioner spent two days working with different attorneys to resolve his case. Plea counsel explained the terms of the State's plea offer and their unwillingness to settle the case otherwise. Petitioner had no defense for the driving on a suspended license charge. Petitioner testified at his sentencing hearing that the stolen license plate charge was a misunderstanding but provided no proof at his post-conviction hearing. Petitioner also testified at his sentencing hearing that he did not have notice of his court date regarding the failure to appear charge. However, a letter from Petitioner's previous attorney is in the record. As well, the record reflects that a previous court date was continued and Petitioner's previous attorney would send Petitioner notice of the new date. Petitioner failed to update his address with his attorney. We do note, that upon learning about Petitioner's immigration status during the sentencing hearing, the judge should have addressed Petitioner to find out if he understood the immigration consequences that a guilty plea may have. However, the judge substantially complied with Tennessee Rule of Criminal Procedure 11. The post-conviction court found that:

> Petitioner pled guilty because he was tired of being in jail[,] and he thought he would be released that day if he proceeded in front of [the judge] with a guilty plea and a sentencing hearing. [The judge] explained to Petitioner that he could have a preliminary hearing; however, Petitioner did not want to wait for that process because he had already been in jail for eight days on these "minor" charges. Petitioner now has "buyer's remorse" about the decision he knowingly, intelligently, and voluntarily made.

The evidence does not preponderate against the post-conviction court's findings. Petitioner is not entitled to relief.

_____
TIMOTHY L. EASTER, JUDGE